## J. M. T. MEAHER v. LUFKIN & LEWIS.

The general rule is indisputable that in the absence of any general usage or course of trade, that goods carried on deck and jettisoned, give no claim for contribution.

But where they are so carried according to common usage and the course of trade on the voyage for which they are shipped, their jetttison does give a claim for contribution.

Proof of a custom is not admissible to vary the law of the land, yet it is proper to admit proof of the common usage and course of trade in order to apply the rule of law to the particular case.

Error from Galveston. Tried below before Hon. J. H. Bell.

This suit was brought in the Court below to recover freight on lumber delivered by the plaintiff to defendants at Galveston.

The bill of lading which is in evidence shows that defendant's lumber was shipped on the deck of plaintiff's vessel at the port of Mobile, to be delivered at the port of Gal veston. The shipment on deck was therefore under a special contract, as shown by the bill of lading and statement of facts.

A portion of defendant's lumber was necessarily and lawfully jettisoned by the plaintiff on the passage, during a storm.

The suit was brought by plaintiff below to recover freight only on that portion of the lumber delivered to defendants. The defendants set up a usage and custom of the trade to carry a portion of the cargo on deck, which was denied by plaintiff. When defendants offered their evidence to prove the usage and custom, plaintiff objected to the testimony and the objection was overruled and the testimony

introduced, to which ruling plaintiff excepted.

The defendants claimed that their loss on the lumber jettisoned must be made up to them by a general average and contribution upon the vessel and cargo saved, and the Court below (a jury having been waived) so decided, and gave judgment accordingly.

*F. H. Merriman* and *M. M. Potter*, for plaintiff in error.
I.  The plaintiffs contend that the judgment of the Court below was erroneous.

" Deck load jettisoned is not the subject of general average and contribution." (Commentaries of Valin on the French Ordinance of 1681, Title du Jet a 13 ; Abbott on Shipping, 335, 686, note ; 3 Kent Com. 239 ; 1 Phillips on Insurance, 486–7 ; 2 Id. 78, 79, 80 ; Lenox v. United Insurance Co., 3 John. Cases, 178 ; Smith v. Wright, 1 Caine's Rep., 43 ; Dodge v. Bartol, 5 Greenleaf Rep., 286 ; Sproat v. Donnell, 26 Maine Rep., 185 ; Crain v. Acken, 1 Shipley Rep., 229 ; Hampton v. Brig Thaddeus, 4 Martin N. S. Rep., 582 ; Wolcott v. Eagle Ins. Co., 4 Pickering Rep., 429 ; Lawrence et al v. Minturn, 17 Howard Rep., 100.)

All other authorities upon the subject are in accordance with the above principle.

II.  Cargo stowed on deck, with the consent of the shippers, if lost by jettison, the owners of the vessel are not liable, and the loss is soley the shippers. (Taunton Copper Co. v. Merch. Ins. Co., 22 Pickering Rep., 108 ; Dodge v. Bartol, 5 Greenleaf Rep., 286 ; Crain v. Aiken, 1 Shipley Rep., 229 ; Eager v. Atlas Ins. Co. 14 Pickering Rep., 141 ; Homer v. Door, 10 Mass. Rep., 27 ; Smith v. Wright, 1 Caines Rep., 43 ; Lawrence et al v. Minturn, 17 Howard Rep. 100.)

III.  The general and universal principle of maratime law being " that a shipment on deck is not the subject of general average and contribution, and that the ship owner is not lia-

ble for its loss by jettison," no proof of usage and custom can be introduced to create a liability contrary to such law.

The schooner Reeside, 2 Sumner, 568, per Story, Judge, decided in 1837 : " I own myself no friend to the almost indiscriminate habit of late years of setting up particular usages and customs, in almost all kinds of business and trade to control, vary or annul the general liability of parties under the Common Law as well as under the Commercial Law. It has long appeared to me that there is no small danger in admitting such loose and inconclusive usages and customs, often unknown to particular parties, and always liable to great misunderstanding, and injustice, and misrepresentations and abuses, to outweigh the well known and well settled principles of law. And I rejoice to find that of late years the Courts of Law, both in England and America, have been disposed to narrow the limits of the operation of such usages and customs, and to discontinue any further extension of them. The true and appropriate office of a usage or custom is to interpret the otherwise indeterminate intention of parties, and to ascertain the nature and extent of their contracts, arising, not from express stipulations, but from mere implications and acts of a doubtful or equivocal character. But I apprehend that it can never be proper to resort to any usage or custom to control or vary the positive stipulations in a written contract, and a *fortiori*, not in order to contradict them. An express contract of the parties is always admissable to supersede, or vary, or control a usage or custom ; for the latter may always be waived at the will of the parties. But a written and express contract cannot be controlled, or varied, or contadicted by a usage or custom." (Donnell v. Columbia Ins. Co., 2 Sum. R. 366; The Paragon, Wares C. C. Rep., 329; Dodge v. Bartol, 5 Greenl. Rep, 286.)

Taunton Copper Co. v. Merchants' Ins. Co., 22 Pick. R. 109: In this case a usage and custom for forty years, were proved, had existed in the carrying trade between Taunton and Somerset and

New York, and Providence and New York, to stow and carry on deck without notice to the shipper, and at the same rate of freight as under deck, such goods as were not liable to be injured by dampness, and that pig copper was within the usage, which constituted the deck load jettisoned, the value of which was sought to be recovered upon a general policy on cargo. Decided 1839, per Putnam, Judge, page 115. "We agree to the position stated for the plaintiffs ; a settled usage of trade not contrary to any principle of law, and not inconsistent with the objects and terms of the policy, will be presumed to be known by the underwriters, &c. But to look more nearly to the usage proved in the case, it does not follow that because goods not liable to be injured by dampness are usually carried on deck, that it is usual for underwriters to pay for them. The usage stops in limine, or at most is only one step on the journey, &c. If these plaintiffs could recover, every person could recover a loss of goods on deck under a general policy, by proof that such goods are usually carried on deck. So they are ; but they are at the risk of the owners, unless they obtain the assent of the underwriters to take the risk of them." (Coxe v. Heisley, 19 Penn. Rep., 243.)

Stillman & Brother v. Hurd, 10 Tex. Rep. 109 : In the statement of facts and exceptions in this case, it appears that the defendant offered to prove that it was and had been the usual practice in Brazos harbor and along the southern coast of Texas, for masters and captains of coasting vessels laden with lumber of all sorts, to make a sale of the same to purchasers, without showing or there being any authority for so doing than the fact of their being master or captain of said vessel in which said lumber was brought in for sale." Proof rejected and exception taken. Upon this exception in the Supreme Court, in delivering the Opinion of the Court, at page 112, Chief Justice Hemphill says : " Nor was there error in refusing evidence as to the alleged custom of captains of coasting vessels, laden with lumber, making sale, in the Brazos harbor

and along the southern coast of Texas, of the cargo to pur-chasers without other authority for that purpose than the fact of their being captains or masters. This custom, if any such exist, is in contravention of the established law."

IV. In cases where the custom and usage to carry a por-tion of the cargo on deck has been proved, the decisions have been " that the jettison of such deck load is not the subject of general average and contribution, and that the ship owners are not liable for the loss."

Sproat v. Donnell, 26 Maine Rep., 185, decided in 1846 :— In this case, the Court will see, that all of the authorities of the English Courts in opposition to the principle decided, were quoted on the trial. Even the 3d volume of Hunts' Merchants' Magazine, to show the opinion of Phillips, author of Phillips on Insurance, upon the point as to whether a custom could vary the general law in relation to deck cargo, was presented. This opinion was given at the request of Zebedee Cook, Pre-sident of the New York Mutual Safety Insurance Co., and for which Mr. Phillips was undoubtedly well paid; and for his attempts to fix the exception stated in Valin, as applying to boats and small vessels, in short coasting voyages, to the whole oceanic commerce of the United States, he was without ques-tion, working for and in the pay of Insurance Companies. In the language of Chief Justice Black in the case of Coxe v. Heis-ley, "the custom and usage is set up to overthrow a well settled rule of commercial law, and to defeat the contract of the party as well as the law." The errors of Phillips are shown in the Opinion of Judge Weston in the case of Dodge v. Bartol, and by Judge Story, in the case of the schooner Reeside. It is enough to know that not a single American decision has ever sustained his exception, or Valin's, where the point was in controversy. The other decisions referred to under this head are : The Paragon, Ware, C. C. R., 329; Dodge v. Bartol, 5 Greenl. Rep. 286 ; Taunton Copper Co. v. Merch. Ins. Co., 22 Pick. R. 109.

The foregoing authorities conclusively establish the following points raised by the assignment of errors :

1st. That the Court erred in allowing evidence to be introduced in relation to customs or usages, the same having been objected to by plaintiffs. There was a special contract of shipment on deck between plaintiffs and defendants, as shown by the bill of lading, which is the contract between the parties, at page five of the record, and the admission of defendants at page fifteen of the record.

The law is, that where there is a special contract of shipment on deck, no evidence of custom and usage can be introduced, either to vary the express terms of such contract, or the general maratime law governing such contract.

If the custom and usage existed as set up in the defence, it was error to permit the witnesses to establish it by evidence, because the shipments on deck in this cause was by express contract between the parties ; and defendants rights under the custom and usage, if any existed, had been waived by the express contract. For if a usage and custom in point of fact existed, which would make a shipment on deck under a clear bill of lading, subject to the same law as a shipment under hatches, then the law growing out of such usage and custom is changed by an express contract of the parties to ship on deck. The express contract does away with the law growing out of the usage and custom, and makes the deck load, under the express contract, subject to the general maratime law.

Per Story, Judge, in the case of the schooner Reeside, 2 Sumner, 568 : " An express contract of the parties is always admissable to supersede, or vary, or control a usage or custom; for the latter may always be waived at the will of the parties ; but a written and express contract cannot be controlled or contradicted by a usage or custom."

The authorities before cited in the brief establish conclusively the points as made :

1st. Deck load necessarily jettisoned is not the subject of general average and contribution.

2nd. If the cargo is shipped on deck by the bill of lading, or consent of the shipper, then in case of necessary jettison, the shipper has no claim against the owner of the vessel, or balance of cargo saved, for the loss.

3rd. Evidences of usage and custom cannot be received to contradict an express contract, or to violate a well established principle of law, and the exception of Valin does not in any case apply to large vessels running outside on the high seas.

*Sherwood & Goddard*, for defendants in error. I. Goods laden on deck by the custom of a particular trade are entitled to a contribution, in case of jettison, like other goods; the custom being a constructive notice to the shippers under deck that goods are shipped on deck. (Valin Com't on Ord, Tit. du Jet., Art. 13, Vol. 2, p. 532, ed. 1829; Emerigon, Tome 1, 640; Abbott on Shipping, 481, *et seq.;* 3 Kent's Com., p. 240, n. a.; Flander's Maratime Law, 237, *et seq.* and n.; 2 Phillips on Insurance, Sec. 1282, *et seq.*; Parsons' Mer. Law, 370; 2 Arnauld on Insurance, Sec. 888 and n.; Da Costa v. Edmunds, 4 Camp. 142; Gould v. Oliver, 4 Bing. N. C., 134, decided in 1837; Milward v. Hibbert, 43 Com. Law R., 659, decided in 1842.)

These three cases are cited as establishing the rule in Hildyard on Ins., 7 New Law Library, 279; by Shee in his edition of Abbott on Shipping; by Kent in note a, p. 240; by Phillips in his work on Ins.; by Perkins in his notes to Arnould on Ins.; and by Parsons in his recent admirable Treatise on Mercantile Law.

The same doctrine is recognized (obiter) in Lawrence *et al* v. Minturn, 17th How., 100, decided in 1854; also, in Angell on the Law of Carriers, Sec. 215.

The cases cited *per contra* are the following: (Lenox v. The U. States Ins. Co., 3 John. Cases, 178 decided in 1802;

Smith v. Wright, 1 Caines R., 43, decided in 1803 ; Hampton v. Brig Thaddeus, 4 Martin, 582, decided in 1817 ; Barber v. Brace, 3 Conn., 9, decided in 1819 ; Dodge v. Bartol, 5 Greenl., 286, decided in 1827 ; Wolcot v. The Eagle Ins. Co., 4 Pick., 429, decided in 1827 ; The Paragon, Ware's R., 322, decided in 1836 ; Crain v. Aiken, 13 Maine, 229, decided in 1836 ; Sproat v. Donnell, 26 Maine, 185, decided in 1846.)

Of these cases it is sufficient to say, that scarcely one of them raises or even involves the question presented in this case ; that the reasoning of the Court in nearly all of them either assumes or concedes the rule contended for by the defendants in error ; that all but the last (Sproat v, Donnell,) are not only prior in time to the English decisions heretofore cited, but are also referred to by the later commentators, who, after due consideration of all the adjudications, lay down the rule claimed by the defendants in error ; and that Sproat v. Donnell being decided in evident ignorance of the English cases, and of the approval of those cases by the later editions of Kent and Abbott, as well as by Flanders, Angell, Phillips, Arnauld and Parsons, is, in itself, considered, of no authority whatsoever ; and even if it were, must be regarded as overwhelmed by the weight of opposing authority, including the later case in 17th Howard.

II. As a question is made as to the competency of the proof establishing the usage in this case, we refer the Court on that point, to Smith v. Wright, 1 Caines, 43 ; Barber v. Brace, 3 Conn., 13 ; The Paragon, Ware's R., 328, Coit et al v. The Com. Ins. Co., 7 John., 386 ; Milward v. Hibbert, previously cited.

III. That the claim for average contribution was well pleaded in reconvention, will not, we presume, be controverted. It was a claim on which the defendants had their action against the plaintiffs, and which they might properly recoup

against the demand for freight. (Abbott on Shipping, 507-'8, and notes ; Sedgwick on the Meas. of Damages, 451 ; Berkley v. Peregrave, 1 East. 220 ; Price v. Noble, 4 Taunton, 123.)

The point made by Mr. Merriman in his closing argument, viz : that the mere taking of a bill of lading for the lumber, in which bill of lading the lumber is said to be on deck, shows a special contract for so stowing the lumber, and that by such contract the ship owner would be exempt from liability, is frivolous. Bills of lading are always taken, no matter where the goods are stowed, and no matter what custom exists as to the method of stowing. (See Capt. Sawyer's testimony on this point.)

The master of the vessel was authorized by the custom to load this lumber either under deck or on deck. In either event he would sign bills of lading for the lumber, and the bills would show where the lumber was stowed.

But even granting that such a bill of lading shows a special contract ; this would not relieve the ship owner from liability where the usage of the trade warrants deck loads. " The consent, in this instance, adds nothing to the authority of the master, and subtracts nothing from the obligations of the ship Besides, where the usage exists, the consent is implied." (Flanders on Ship., p. 239, n. 3.)

To exempt the owner from liability in such a case, the bill of lading must contain a special clause to that effect.


WHEELER, J. This case was argued with great ingenuity and ability on behalf of the appellant ; but we think the great weight of authority and the reason of the law so clearly with the decision of the Court below, as not to require an elaborate opinion. The general rule is indisputable and unquestioned, in the absence of any general usage or course of trade, that goods carried on deck and jettisoned, give no claim for

contribution. But where they are so carried according to the common usage and course of trade on the voyage for which they are shipped, that their jettison does give a claim for contribution is certainly supported by the great weight of authority, especially since the judgment of the Queen's Bench in Milward v. Hibbert, (3 Ad. and E., 120 ; 43 Eng. Com. L. R., 659.) Many of the cases relied on to maintain the contrary are cited in the notes to Perkins' edition of Arnauld on Insurance, (p. 888, 890, n.) and the doctrine they hold is accounted for from the fact of their having been decided before the case of Gould v. Oliver, (4 Bing., 135,) and Milward v. Hibbert. These cases are evidently considered by eminent jurists and commentators upon Maratime Law, as having settled the law as we have stated it ; that is, that if goods are laden on deck according to the custom of a particular trade, they are entitled to contribution from the ship owners for a loss by jettison. (3 Kent, 240, n. a., 8th edit. ; Abbott on Shipping, 481, 482, notes, Story and Perkins' edit. ; 2 Phillips on Ins. 71; Flanders on Mer. L., Sec. 306 ; Parsons' Mer. L., 371.)

This at present appears to be the doctrine universally admitted by the commentators upon the law of shipping, to which we have had reference. It is approved by the recent case of Sproat v. Donnell, decided by the Supreme Court of Maine, (26 Maine, 185,) which however appears to have been decided without reference to the English cases we have cited, and the notes of reference in the late editions of elementary treatises. And to whatever weight this decision may be entitled, we do not think it sufficient to overbear the great weight of authority to the contrary, and the very satisfactory reasoning upon which the cases are decided. We think the law must be regarded as well settled in opposition to the case of Sproat v. Donnell. It might be interesting to follow the very ingenious argument of counsel through the cases cited to support the doctrine con-

Meaher v. Lufkin.

tended for by the appellant. But we do not think it necessary. The references we have made are deemed sufficient to show what the true doctrine upon this subject is ; they will be found amply sufficient to vindicate the propriety of our decision upon principle and authority. It is difficult to conceive how a clearer case for the application of the rule could be made out than the record before us exhibits. And we think it free from doubt that it was rightly applied in this instance. There is nothing in the objection that proof of a custom was admitted to vary the law of the land. That, it is admitted, cannot be done. But it is in every days practice to admit proof of the common usage and course of trade, as in this instance, in order to apply the rule of law arising thereon, to the particular case. We are of opinion that there is no error in the judgment and it is affirmed.

Judgment affirmed.