## WOOD & Co. *v.* THE PHŒNIX INSURANCE Co.*

(*District Court, E. D. Pennsylvania.* March 23, 1880.)

GOODS CARRIED ON DECK—GENERAL AVERAGE—EXCEPTION—CUSTOM— BURDEN OF PROOF.—The general rule is that goods carried on deck are not entitled to the benefit of general average. To this rule there are the following exceptions : *First,* where the goods are carried on deck in pursuance of a general custom ; *second,* where they are carried on the decks of steam vessels: *third,* where they are carried on deck by contract and the suit is against the vessel only. *The Milwaukee Belle,* 2 Biss. 197, disapproved ; *Lawrence* v. *Minturn,* 17 How. 105, distinguished. Where the exception is claimed on the ground of custom, the burden of proof is on the party alleging the custom, and the evidence should be clear.

CARGO LOADED ABOVE AND BELOW DECK—EVIDENCE.—The owner of a cargo loaded both above and below deck insured the portion below deck, the underwriter knowing of the storage of the balance above deck. During a storm the goods above deck were jettisoned. *Held,* that in the absence of clear evidence of a general custom so to carry the goods, the owner had no claim against the underwriter for contribution.

Libel by owner of goods jettisoned against the underwriter of the balance of the cargo to recover contribution by general average. The facts are sufficiently stated in the opinion.

*Henry G. Ward,* for libellant.

*Henry Flanders,* for respondent.

BUTLER, J. On the fourth of October, 1879, the libellants shipped on board the "Mary and Eva," then lying at Millville, New Jersey, a cargo of iron pipe, loaded in part above and in part under deck, 31 tons of which were to be delivered in New York and the remainder at West Point. In the course of the voyage the vessel encountered tempestuous weather, and it became necessary to throw a portion of the deck cargo overboard. The respondent had insured what was under deck with knowledge that similar cargo was to be carried above. The libel asserts "that it is the custom of the trade, in shipping cargo of iron pipe, to load a part thereof on deck," and claims that the respondent is liable to contribution by general average. The answer denies the existence of such a custom and of all liability for the loss. It would seem that the deck

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

load was not included in the policy because the libellants were not willing to pay the respondent's terms for such insurance.  The propriety of the jettison is not questioned.

The doctrine of general average for property thus lost was a part of the celebrated maritime code of the ancient Rhodians, in which it was thus stated: "If goods are necessarily thrown overboard, for the purpose of lightening the ship, the loss is to be made good by the contribution of all, because it was insured for the benefit of all."  No clearer statement has been made since.  The doctrine is founded in pure equity. The sacrifice being made for the safety of the vessel and remaining cargo, the owner of the goods should bear no more than his just proportion of the loss thus incurred.

From the benefit of this right to contribution the owner of goods loaded above deck was excluded on the ground that such loading is improper, tending to embarrass the movements of the crew and the working of the ship.  To the universal application of the rule (excluding deck cargo) serious objection has been made from the outset, and strenuous effort used to limit its operation.  It has been urged that some goods may be placed on deck without embarassing the crew, or the movements of the vessel, and especially in short voyages from port to port; that custom has established the safety of such loading in some kinds of cargo and in voyages between certain places; and that where such loading is in pursuance of contract with the carrier he cannot urge the objection that it is improper.  From the beginning most, if not all, elementary writers on the subject have stated the rule with exceptions.  Valin says: "The doctrine excluding goods carried on deck (and jettisoned) from general average ought to be controlled by the usages of trade; and accordingly contribution may be claimed for goods thrown overboard from the decks of small coasting vessels, or river craft, which usually carry part of their cargo on deck."  Valin Ord. de la Mar. art. 13.

The only exception which seems well supported, of an early date, is one in favor of goods carried on deck in pursuance of *custom*.  What is said in the early cases and elementary works, respecting goods so carried on small coasting vessels,

must be referred to custom, and is true only to the extent that such custom is shown to exist. As the reason for exclusion is the unsafe and improper loading, it might be supposed that the rule would not apply in any case where it could be shown by testimony that, from the character of the cargo or the voyage, the loading is safe and proper. A careful examination of the authorities, however, will show that this question is referred to the judgment of the trade as expressed in its customs, and cannot be inquired of in any other way.

When steam was applied to purposes of navigation it was found that cargoes could be carried on the decks of vessels thus propelled with safety, and the rule has not, therefore, been applied to cargoes so carried. At the present time a further exception is allowed in most maritime countries against the vessel and its owners, where the cargo is carried on deck, by agreement between the owner of the cargo and the vessel.

In England, until the year 1837, no exception whatever was allowed. Goods carried on deck were, under all circumstances, excluded from the benefit of contribution. In that year the cases of *Gould* v. *Oliver*, 4 Bing. (N. C.) 134–140; *Hireley* v. *Milward*, 1 Jones & Carey, 240, arose, and were followed in 1842 by *Milward* v. *Hibbard*, 3 Ad. & El. (N. S.) 121. Since the decisions in these cases the exceptions allowed elsewhere —in favor of goods carried on deck in pursuance of custom, carried on the decks of steam vessels generally, and by contract where the claim is against the vessel—may be regarded as well established there. Elementary writers and judges in numerous instances have used language indicating a belief that the exceptions are more extensive, embracing deck cargo in all coastwise trade, and justifying claims against the owners and insurers under deck where previous knowledge is shown of an agreement to load above. No case, however, has been cited by counsel nor found by the court in which this has been allowed. In *Johnson* v. *Chapman*, 35 L. J. C. P. 23, (decided in 1865,) which followed the ruling in *Gould* v. *Oliver* and the other English cases cited, the learned counsel who depended on these cases said, (as appears by the report :) "It was decided in *Gould* v. *Oliver* that, as between the shipper

on deck and the vessel, where the goods are so carried by agreement, the latter is liable to contribution for jettison, but not the owners or the underwriters of the under deck cargo."

In *Hireley* v. *Millward, Johnson* v. *Chapman,* and in every other case found in which the claim for contribution was based on an agreement to carry on deck, the suit was against the vessel or its owners alone.

Lownds on General Average, at 41 and succeeding pages, says, (after noticing the change effected by *Gould* v. *Oliver,* and the other cases cited:) "Where the provision for carrying on deck is inserted in the charter-party the loss for jettison is replaced by contribution between the ship-owner and the owner of the deck load. It is adjusted in the same manner as a general average would be, but it is a general contribution. Payment by general contribution is enforced from no one who has not, by express contract, made himself a party to the stowage on deck. If there are on deck goods belonging to a third party, such party is not held liable to pay any share in the contribution. No insurer is asked to replace what his assured has contributed unless there is a clause in the policy assenting to the deck shipment. The principle of these adjustments is that, as between the assenting parties to such stowage, the deck must be taken to be a proper place for such stowage, which is thence to be treated as if stowed below; but, as regards all parties who have not thus assented, the old rule remains in force, and from them there is no general average."

There is no proper warrant for the suggestion that owners below deck, and underwriters, may be held to an implied assent that goods shall be carried above, from knowledge that the master has contracted so to carry. The author just quoted, when remarking upon the general terms employed by the court in *Johnson* v. *Chapman,* and other cases, says: "These observations must be understood with reference to the question before the court; that is, to the right of the owner of the deck load to contribution from the owner of the ship."

In our own country the question has escaped the federal courts, except in a single instance, which will be noticed

directly. In the state courts, down to 1837, the English rule, as then applied, was followed, and the exceptions allowed elsewhere disregarded. Since that date these courts have differed, in some of the states adopting the exceptions now recognized in England, and in others disregarding them. Chancellor Kent (3 Kent's Com. 11th Ed. p. 323) and Parsons (in his work on Shipping, p. 333) express the impression that the weight of authority here is against the exceptions. While this impression may have been correct at the time it was expressed, it is not, in my judgment, at this time. *Gillette* v. *Ellis*, 11 Ind. 578; *Meahrer* v. *Lufkin*, 21 Texas, 383; *Harris* v. *Moody*, 4 Bosw. 210; *Insurance Co.* v. *Spears*, 30 N. Y. 270.

Mr. Phillips, in his work on insurance, section 1282, after noticing the cases decided in this country and abroad, says: "Taking into consideration the whole jurisprudence on the subject the better doctrine, though opposed to some of the adjudications cited, seems to be that a jettison of deck load is to be contributed for in general average *when the stowing of the jettisoned articles on deck is justifiable,* and the other parties interested have notice, by the policy, or by usage, or otherwise, that such articles may be so carried, and there is no plainly established usage denying the right to claim contribution." While this language is not free from ambiguity it will not admit of any other reasonable interpretation than that where the stowage on deck is justifiable and proper (as in cases of general custom or under contract) contribution may be had, unless indeed, there be a usage to the contrary. All the author says is predicated of the stowage being proper.

Mr. Parsons, (2 Par. on Mar. Ins. 221,) after reviewing the cases, says: "The rule should be that, wherever, from the peculiar nature of the goods, or of the voyage, or, in fact, for any reason, a custom exists to carry on deck, and this custom is so well established and known that the insurers must be presumed to have known it, they should not only pay for them if lost, but should pay the owners of the goods [carried under deck] for their contribution for the goods if jettisoned to save the ship and cargo." Where a custom is shown, knowl-

edge of its existence is presumed. As before remarked, the question has escaped the federal courts except in the single instance of *The Milwaukee Belle,* 2 Biss. 197. *Lawrence* v. *Minturn,* 17 How. 105, turned on a different point. The suit was for non-delivery of merchandise, carried on deck by contract. Being lost by peril of the sea, for loss by jettison is such, without fault of the vessel, it was not responsible for non-delivery. Had the claim been for contribution a different case would have been presented. Some observations are made by the court on the general subject of contribution for jettison, but the citations show that the particular aspect of the subject now under consideration was not in mind. The court was indeed careful to distinguish the claim before it from one for contribution, saying that the libellant's "right to contribution is not involved in the case."

The *Milwaukee Belle* was decided by the district court for the eastern district of Iowa. The claim was against the vessel for contribution. The goods jettisoned from the deck had been placed there under a contract with the owner of the vessel, made at his instance and for his special benefit. The court dismissed the libel, relying on *Lawrence* v. *Minturn* for doing so. It is submitted, with great respect and deference for the judgment of the court, that the review of this subject already made shows that this decision cannot be followed consistently with the well established doctrine abroad, or the weight of authority at home.

The question in the federal courts must be regarded as still open, and it may well be regretted that this case cannot reach the supreme court, and the danger of conflicting decisions and confusion, respecting a subject of so much importance, be avoided. In my judgment the rule, with its exceptions as established abroad, is wise and just, and I am unable to see any good reason why we should not follow it. The importance of uniformity in commercial and maritime laws and usages throughout the world cannot be disregarded in considering the question.

Does the case in hand fall within either of the exceptions? The only one the libellant can invoke is that which rests on

custom. The vessel was not propelled by steam, nor was the respondent party to a contract to carry on deck. Has a custom so to carry been shown? The voyage, as we have seen, was from Millville, New Jersey, to New York and West Point, and the cargo consisted of iron pipe. The respondent knew that a part was to be carried on deck; but this knowledge, in the absence of a general custom rendering such carriage proper, is unimportant. It imposed no obligation. If any existed it is because the trade had determined, and declared by its custom, that such carriage is safe, and therefore proper. Nor can importance be attached to the respondent's payment for a previous loss. It is not clear that the circumstances were correctly understood, and, if they were, the payment is entitled to no weight in determining the legal responsibility involved here. Was the cargo carried on deck in pursuance of a general custom of the trade? On this point there is the testimony of a single witness, the libellant's former book-keeper. His knowledge on the subject does not seem to extend beyond his employer's business, and his testimony is virtually confined to a statement of their practices. His general expressions of belief are of no value. There is no evidence that it is customary to carry generally on deck between Millville or other adjacent ports and New York and West Point, nor so to carry freight of the particular description here involved. The testimony need not have been confined to the carriage of iron pipe, for it may be that this has not been sufficient to establish a custom. It might have extended to other bulky cargo of similar character. The burden of proof is on the libellants, and to establish a custom so as to take their case out of the general rule of law the evidence should be clear. It is not, and their claim cannot therefore be allowed. *Coxe* v. *Heisley*, 19 Penn. 243.

In this connection the language of Judge Story in the case of *The Schooner Redside*, 2 Sumner, 584–586, may be read with advantage: "I own myself no friend to the almost indiscriminate habit of late years of setting up particular usages in almost all kinds of business and trade to control, vary, or

annul the general liability of parties under the common law, as well as under the commercial law." It is proper to say that I do not attach any weight to the fact that the respondent declined to insure the deck cargo. The claim is not founded on the contract of insurance, but on the obligations which the law is supposed to attach to the relations of the parties. Nor do I consider it important that the under and over deck cargo belonged to the same person. The risk of that under was on the respondent, and if that above had been properly there—as in pursuance of general custom so to carry—the sacrifice of it for the respondent's protection would, I believe, render him liable.

Decree dismissing the libel.