Opinion delivered June 14, 1887.

---

No. 2100.

JULIUS G. TUCKER *v.* G. S. SMITH. *

1. EVIDENCE.—A plaintiff in trespass to try title, was permitted over defendant's objection to detach a plat from a file paper which with the map had been recorded as a judicial survey and partition of the land in controversy, and read in evidence the partition without the plat, both portions of the detached documents remaining on file. *Held,* no error, the defendant being accorded the privilege to place in evidence the detached plat if he desired to do so.

2. SAME.—See opinion for facts with reference to which a question which sought to elicit on an issue involving the boundary of a survey, the action of a surveyor in running the line of another survey was held to be proper, and pertinent to the issue.

3. PRACTICE—BILL OF EXCEPTIONS.—The action of the district court in excluding a question, will not be reversed when the bill fails to disclose the character of the answer sought.

4. DECLARATIONS.—The declarations of deceased parties who were disinterested, and in position to know the true location of the lines of a survey made upon the ground and in view of the objects identified by them, are admissible, to establish boundary.

5. EVIDENCE.—Though evidence which should have been excluded was admitted on the trial of a cause, it can afford no ground for a reversal of a judgment, which, in view of all the facts properly in evidence, it could not have influenced.

6. CUSTOM—EVIDENCE.—Proof of a custom whereby one is denied a right to land embraced within the boundaries set forth in his title papers, or

---

*The opinion in this case was delivered during the Galveston term, 1887.

which changes the legal effect of the deeds under which he claims, is inadmissible in evidence.

7. Declarations.—The declarations of a vendor, made after he has parted with the title are not admissible in evidence.

8. Survey.—If a surveyor in running from a base line a dividing line between lands set aside from the same original survey to joint owners, reaches the river on which the land fronts, he may go around a bend of the river and continue his dividing line from a point on the continuation of his course so as to give to each tract its proper portion of land. On a question involving the true location of such division line, the surveyor being dead, a charge which as matter of law would require the original line to terminate at the point where the river was first reached from the base line, would be error.

9. Custom —Where there is evidence as to what a surveyor actually did in making a survey, the custom of surveyors under like circumstances to do or not to do the same thing, can not be shown.

10. Charge of Court.—It is the privilege of a litigant who objects to a charge, not because it states the law wrong, but by reason of its generality, to ask a more specific instruction; failing in this he can not complain.

11. Limitation.—When proprietors of adjacent lands are each in like possession, the improvement made by one which encroaches but slightly over the dividing line does not necessarily affect the other with notice of an effort to acquire the land by limitation. Limitation would only apply to the portion actually adversely occupied.

12. Estoppel.—An estoppel rests upon actual or construction fraud. It follows that the action of a land owner in fencing and claiming to a fixed point on the line of his survey, will not estop him from claiming under his deed that the line be extended, when his action has not caused others to alter their position regarding the property, and the establishment of his claim in connection with acts done by him, would not operate as a fraud on any one.

Error from Cameron. Tried below before the Hon. J. C. Russell.

The opinion states all the facts contained in a transcript of five hundred pages which are important to its being properly understood.

The map will aid to explain the situation of the land.

*Mason & Miller*, for plaintiff in error, cited Hurt v. Evans, 49 Texas, 316; Evans v. Hurt, 34 Texas, 111, and authorities cited; Stroud v. Springfield, 28 Texas, 665; Swisher v. Grumbles, 18 Texas, 176; City of Galveston v. Menard, 23 Texas, 395; Phillips v. Ayers, 45 Texas, 609; Davis v. Smith, 61 Texas, 18; Hefner v. Downing, 57 Texas, 580; Coleman v. Smith, 55 Texas, 250; Browning v. Atkinson, 46 Texas, 608; Smith v. Russell, 37 Texas, 256.

*Waul & Walker* and *Stafford & Hicks*, for defendant in error, cited Stafford v. King, 30 Texas, 257; Jones v. Burgett, 46 Texas, 284; Boon v. Hunter, 62 Texas, 582; Jones v. Andrews, 62 Texas, 660; Stroud v. Springfield, 28 Texas, 649; Hurt v. Evans, 49 Texas, 311; Bird v. Pace, 26 Texas, 488; Reeves v. Roberts, 62 Texas, 552; Pridgen v. Hill, 12 Texas, 374; Hunter v. Hubbard, 26 Texas, 537; Patton v. Gregory, 21 Texas, 513; Cotton v. Campbell, 3 Texas, 493; Dikes v. Miller, 24 Texas, 417; Adams v. Hicks, 41 Texas, 240.

WILLIE, CHIEF JUSTICE. This is an action of trespass to try title, and was brought to recover some three hundred acres of land lying in what was formerly a bend of the Rio Grande river. A large tract of land known as La Feria grant, consisting of twelve leagues, was in 1843 partitioned amongst its various owners. This grant fronted on the Rio Grande, which is at this point very irregular in its course; and the surveyor who ran the lines for the partition did not meander the river, but ran a base line so as to clear its various bends; and at right angles to this ran the division lines between the different part owners of the grant. The general course of the river here is from west to east, and this was about the direction of the base line. The partition lines were extended to the north boundary of the grant, and their distances from each other on the base line were made such as would have given to each owner his proper proportion of land had the base line been the true southern boundary of the survey. These partition lines were, however, intended to extend to the river, and to embrace such lands as would be included between them south of the base line and between it and the Rio Grande had they been actually extended to the river. Two tracts adjoining each other, which were set apart to part owners of the grants, became the property of one Neale and one Galbert respectively, the former owning the eastern tract

and the latter the western. The point on the river at which the division line between these two tracts should end was the disputed question in this case.

It was shown that in 1843 the Rio Grande changed its general course at a place a little west of south from the point where the division line of these tracts intersected the base line made by the surveyor, and ran in a somewhat northerly direction, and then, after making a curve, it ran in a direction south southwest till it reached a point about eighteen hundred varas from where it left, as above stated, its general course, and then turning and making a sharp curve, it pursued its usual easterly direction.

The effect of all this was to include a long, narrow strip of land in the bend made by the river taking a northerly and then a southerly direction, as above stated, called in Spanish a *zurron* or *bolsa*, and to form between the lower part of the last line of the bend and the river after it resumed its original course, a somewhat triangular shaped piece of land, called in Spanish a *potrero*. This is the land in controversy. The point where the division line between Neale and Galbert struck the said base line was nearly in a north direction from the curve of the river at the upper part of the zurron, and it is contended by the appellant who has succeeded to the Neale land, that an extension of their partition line to the Rio Grande would strike that stream at the upper part of the zurron. He claims that there the division line must stop; and, if this be so, it is clear that the potrero will fall within the Neale boundaries.

The appellee, who owns the Galbert tract, says on the other hand, that the division line must be so extended as to strike the Rio Grande at a point east of the place where it made the sharp curve and resumed its generally eastern course. If this be so, the potrero will be left to the west of the division line, and will fall within the bounds of the Galbert tract. In 1859, the Rio Grande ceased to flow around the bend which formed the zurron and ran directly across the other side of it and left it on the north bank of the river.

The defenses of the appellant were not guilty, and the statute of limitations. The cause was submitted to the jury, and they, under the charge of the court, found a verdict for the plaintiff, and judgment was entered accordingly. From this judgment Tucker has appealed; and his assignments of error are directed to the admission and rejection of testimony, the giving and

refusal of charges by the court, and the want of evidence to support the verdict.

We shall not notice the first and second assignments of error, as they relate to the introduction of testimony, and the points are not saved by proper bills of exception. (District court rule 55.)

The plaintiff filed, as part of his abstract of title, the judicial survey and partition of the La Feria grant, made in 1843, having attached to it a plat of the same, made for Galbert in 1847. These two documents had been recorded together in 1848. Upon motion of the plaintiff, made at the threshold of the trial, he was allowed by the court to disconnect these two documents, and to put the partition in evidence, without introducing along with it the plat of 1847. To this the defendant objected and reserved a proper bill of exceptions to the action of the court. This bill, however, shows that, whilst the court allowed the papers to be separated, it did not permit either to be taken from the file, and that the privilege was given the defendant of placing the same in evidence before the jury. The map does not appear in the statement of facts, but that shows either that the defendant did not avail himself of the privilege given him by the court, or, if he did, that he did not think the map of sufficient importance to bring it before this court. The defendant, therefore, was not injured by the action of the court.

On the trial, the plaintiff asked a witness the following question: "In running the line of the Llano Grande land, would you not have had to run much further into Mexican territory than you did in running this one between Smith and Tucker's land?" Objection to the question for immateriality was overruled. To understand the object of the question, it is necessary to state that the La Feria tract was bounded on the north by a tract known as the Llano Grande. Their division line as recognized, ended upon the river at the point which could not have been reached except by crossing the Rio Grande at the head of another zurron or bolsa into Mexican territory and recrossing again to its left bank and continuing the line to its termination on the river. From the conformation of the zurron intersected by the line between Neale and Galbert it seems that that line would also cross into Mexican territory if the river ran as it did before the zurron was cut off by a change in its course. The Llano Grande line was the admitted west boundary of the La Feria grant, and of Galbert's portion of it. The

eastern line of Galbert, a part of which is in dispute, was intended to run parallel with the western boundary. The fact then that this western boundary as recognized, apparently crossed the Rio Grande at the head of a zurron into Mexican territory and then crossed it again to the American side, and was recognized throughout its whole distance as the true western boundary of the La Feria grant was a circumstance of some weight to show that the eastern line did not necessarily stop at the point when it first touched the river, but might be extended to the terminus claimed by the appellee, though in so doing it apparently crossed into Mexican territory. The fact is more ɪ ɔtent when we consider that both lines were made by the same surveyor about the same time, who likely pursued the same course in regard to lines, so similar to each other in their manner of intersecting the river and apparently crossing it, each at the head of a zurron and running into Mexican territory. We think the question was proper, more especially as the surveyor was dead, and the survey was made so long ago, as to almost preclude the possibility of proving anything about it by living witnesses. The bill of exceptions not showing what the appellant expected to prove by the witness in answer to the question referred to in the fifth assignment of error, we can not revise the ruling of the court excluding the question. (Reddin v. Smith, 65 Texas, 28.)

There was no error in permitting the witness to testify as to the statements of deceased parties, who pointed out to him posts upon the disputed line as posts placed there by the surveyor who ran the original partition lines. It is well settled by our decisions that the declarations of disinterested parties since deceased, who were in a position to know a boundary line, are admissible in a controversy about such line. (Evans v. Hunt, 34 Texas, 111; Hunt v. Evans, 49 Texas, 311; Stroud v. Springfield, 28 Texas, 649.) These declarations were made whilst the parties who made them were on the line, and in view of the posts. Two of these parties were found to be dead at the time the testimony was offered, viz., Cario and Longoria. It was not shown that the two axmen were dead, but the bill of exceptions does not point out with certainty that their statements were objected to for want of this proof. What particular predicate was lacking to admit the proof, is not shown.

As to the declarations of the axmen and the statement of Hynes as to what he understood from Longoria about his being on Kennedy's land, we can say that whilst it would have been

proper for the court to have excluded them, yet as they could not possibly have influenced the jury as to the points upon which they bore, we can not, because of their admission, reverse a judgment so strongly and overwhelmingly supported by other evidence. The planting of the posts by Chovell was fully proved by Longorio and Caro's declarations; and the fact that Chovell actually ran the line upon which the posts were located was proved by two living witnesses who testified at the trial. This evidence was not contradicted, and had the jury upon this issue found against the plaintiff without considering the declarations of the axmen, their verdict should have been set aside.

The conclusion of Hynes from Longorio's declarations could hardly have influenced the jury as to a fact so abundantly fortified by evidence. The remarks of Judge Hemphill in Patton v. Gregory, 21 Texas, 500, are pertinent, and we may say with him that when we look at the mass of testimony in this cause, it is obvious that this statement could not have had any sensible effect upon a jury presumed to have ordinary intelligence. Suppose the evidence had been excluded, can it be pretended that the finding of the jury would have been changed or affected? (See also Cotton v. Campbell, 3 Texas, 493; Pridgen v. Hill, 12 Texas, 374.) We do not think the evidence could possibly have influenced the verdict, and can not reverse because of its admission.

Smith was asked by his counsel when he first knew of any adverse claim to the land in dispute, which question was objected to by the defendant. The answer details a conflict between Smith and Tucker about the former's building a fence upon the disputed line, and some conversations between them as to the party under whom Tucker claimed. But there is nothing in all the answer that bore upon Tucker's claim under the statute of limitations, or was calculated to influence to jury in favor of either party upon any point in dispute. The testimony was not, therefore, liable to any of the objections taken to it, and whilst it was unimportant, its admission did not prejudice the defendant's case.

No bill of exception shows what the defendant expected to prove by the witness Neale when he asked him if he conveyed the potrero by the two deeds he had made to Maxan. The thirteenth assignment, therefore, will not be considered. The evidence as to a custom among Mexicans by which the bends in a

river were held to belong to the owner of the land against which they abutted, was properly rejected. The rules of law applicable to the case gave to each party the land lying within the boundaries set forth in his title papers, as established by proof. The proposed proof would have subverted this rule of law, as well as altered the legal effect of the deeds under which the parties claimed. That proof of custom can not be admitted when it will have either of these effects, is well settled in this State. (Meaher v. Lufkin, 21 Texas, 383; McKinney v. Fort, 10 Texas, 220; Dewees v. Lockhart, 1 Texas, 535.)

The letter from Maxan to Tucker was not admissible in favor of the latter, having been written by Maxan after he parted with title to the land. (1 Greenleaf on Evidence, sections 180, 189.)

The court refused charges asked by the defendant to the effect that, if the division line between Neale and Galbert could not have been protracted from the point where it crossed the base line made by the surveyor, to the point on the Rio Grande, claimed by the plaintiff to be its southern terminus, without crossing the river, the jury should find for the defendant. These charges could not have been given under the facts before the jury, because there was testimony to show that the division line was actually run and marked by the surveyor below the zurron so as to include the potrero within the Galbert tract; and that nevertheless the line did not cross the river at any place. If a surveyor runs a division line till it strikes the bend of a river, there is no law to prevent him from going around the bend, and running his survey at a point on the river directly in the course of the line he was running, so as to give to the tract on each side of the line its proper quantity of land. Chovell ran his base line for greater convenience in making the partition; but there is nothing to show that he intended to stop or did stop the lines running at right angles to it, at the nearest point where when protracted they would strike the river; and certainly the law did not compel him to do so, especially, to the injury of any part owner of the land. But the effect of the charges was to compel the surveyor to terminate the division line at the point where it first reached the river, and they were therefore properly refused.

For these reasons and those stated in considering the fourteenth assignment of error it was proper to refuse a charge making a custom among surveyors to contradict what Chovell actu-

ally did in making the division line.  The tenth special charge could not have been given without assuming as a fact that the location of the bend of the Rio Grande river at the head of the zurron was the same in 1843, that it was after the river had cut the zurron off to its left bank, when there was much proof to show that the upper part of the zurron had since 1843, moved forward to the east by reason of encroachments of the river; moreover, what we have already said as to custom disposes of this charge.

The charge complained of in the nineteenth assignment when taken in connection with the third charge, amounts to about this, that the plaintiff's deeds were prima facie evidence of title in him to the land in controversy, and that the plaintiff was entitled to recover upon them, unless the jury was satisfied from the evidence, that he was not so entitled, or, in other words, that the prima facie case had been rebutted.  This charge is very general, but it is law, and if the appellant wished it more specific as to the quit claim deed from Kennedy he should have asked special instructions on the subject.

The appellant thinks that he should have had a new trial because the evidence showed conclusively that the plaintiff was barred by limitation, and that plaintiff was estopped from disputing his title.  Both limitation and estoppel are pleas requiring much clearness of proof.  The appellant's counsel, in their brief, have not stated to us the facts in the evidence which render it clear that their plea of limitation was sustained by proof. They refer us to instruments and the statements of witnesses extending over more than fifty pages of the record, to be examined, as to whether or not their conclusion of law, given as a statement of fact, that the defendant and those under whom he claims, have had peaceable, continuous and adverse possession of the land long enough to bar the plaintiff's right, was sustained by the great preponderance of evidence.  This assignment of error could be rejected for want of a proper statement.  It may be stated, however, that we have examined the whole evidence upon the question of limitation, and find it unsatisfactory, and in some measure, conflicting.  It is not made clear that Neale occupied any portion of the land in controversy from 1845 to 1854, and whilst he lived on his part of the La Feria grant. There is proof that Galbert lived on his tract at the same time that Neale occupied his. If Neales's improvement lapped over on to the potrero, the extent of this is not shown, nor that its pos-

session was notorious, visible, distinct and hostile. He may have encroached for a short distance upon the disputed land, without effecting the opposing claimant with notice that he was attempting to acquire it by limitation. In that event he could have pleaded limitation only as to the amount of land actually occupied, and this amount is not shown. (Bracken v. Jones, 63 Texas, 184.) Neales's possession can not therefore benefit the defendant under his plea of limitation; and those claiming under him did not hold adverse, exclusive possession for a sufficient length of time to bar the right of the plaintiff to the entire land. Kennedy, under whom the appellee claims, seems to have occupied the land for fifteen years of the time during which he owned it—which was from 1861 to 1877. There could have been no exclusive possession of the whole potrero during that time.

As to the estoppel, the record does not show sufficient facts to give it foundation. There is not in the statement of facts any map purporting to have been made for Galbert by Dopuy, and, of course, no proof that such a map had been recorded. There was an exhibit introduced in evidence, which appears to be Dopuy's explanation of some map made by him for Galbert, but the map itself does not accompany it. We can not look outside the statement of facts in this case for the evidence introduced on the trial; we can not, therefore, say that Galbert, or those claiming under him, had ever recorded a map confining their land to the limits claimed for it by the defendant. We do not regard the making of the lane from the pasture to the zurron, and placing a post there, as estopping the plaintiff from claiming that it should be continued further south. The lane was made for the mutual convenience in driving stock to water, and the parties, at the time of making it, do not seem to have had in view any such thing as fixing the division line between them to its full extent. There was no intention on the part of Galbert to mislead any one as to his boundaries. He did not by his conduct lead any one to change his position. His line was shown by witnesses to have been marked below the place where the lane terminated. Estoppels rest upon actual or constructive fraud, and the action of Galbert in reference to his line from his ranch to the zurron could not, and did not, work a fraud upon any of the claimants of the land in controversy. The parties were merely making their division line between two points, and, if there is any evidence to show that they intended it to represent the entire length of that line, there is enough of testimony to

render the fact sufficiently doubtful for the jury to have found against the estoppel.

The damages assessed by the jury are fully sustained by the evidence; and, whilst there was no proof that the plaintiff had paid taxes on the land, there was an absence of proof to show that the taxes had been paid by Tucker. The plaintiff was, therefore, entitled to recover rents. There is no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered February 15, 1887.