WM. M. RICE INSTITUTE v. GOOLSBEE.

(Court of Civil Appeals of Texas. April 26, 1909. On Motion for Rehearing, Jan. 25, 1911. Appellee's Motion Denied Feb. 9, 1911.)

1. ADVERSE POSSESSION (§ 31*)—NOTICE OF ADVERSE CLAIM.

The extent of the encroachment on land and not the nature of the use to which the land encroached upon is put, determines its sufficiency as notice of an adverse claim to land not actually occupied.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 128–133; Dec. Dig. § 31.*]

On Motion for Rehearing.

2. ADVERSE POSSESSION (§ 115*)—SUFFICIENCY OF POSSESSION.

Plaintiff's predecessor in title, whose wife owned 120 acres in a survey adjoining the survey in which the 160-acre tract in controversy is located, built a dwelling on the land in controversy just over the line from his wife's land in a small inclosure of about 2 acres, not more than three-fourths of which was on the land

in controversy, and which did not at any point extend more than 60 varas over it, and thereafter built an addition to the dwelling which extended over onto his wife's land. He also built within such inclosure on the controverted land a smokehouse, crib, etc., and built a barn and shop on his wife's land within the inclosure, and the orchard and garden were within it and included the land in both surveys. A lane about 40 feet wide, ran between a 35-acre tract inclosed and cultivated on his wife's land, and the inclosure around the houses, garden, etc. Plaintiff's predecessor knew the correct location of the line between the surveys, and in building his house on the survey in which the controverted land is located intended to acquire the 160-acre tract by limitations. Held, that the possession of plaintiff's predecessor was sufficient to raise an issue for the jury of notice to the owner of the 160-tract of an adverse claim to the whole of that tract.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 694; Dec. Dig. § 115.*]

3. ADVERSE POSSESSION (§ 57*)—CONTINUITY—SUFFICIENCY OF EVIDENCE.

Evidence in an action of trespass to try title, in which plaintiff claimed by adverse possession, held to sustain a finding that plaintiff did not claim the tract in controversy adversely until a certain year, so that there was a break in the possession and occupancy of the land, defeating title by limitations.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 277, 278; Dec. Dig. § 57.*]

4. ADVERSE POSSESSION (§ 44*)—CONTINUITY OF POSSESSION.

If there was a break within the 10-year period in the possession and occupancy of a part of a tract claimed by adverse possession, such possession was not sufficient to authorize a claim of title to the whole tract by 10-year limitations.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 226–231; Dec. Dig. § 44.*]

Appeal from District Court, Tyler County; W. B. Powell, Judge.

Action by Andy Goolsbee against the Wm. M. Rice Institute. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

See, also, 45 Tex. Civ. App. 254, 99 S. W. 1031.

Baker, Botts, Parker & Garwood, Parker & Hefner, and Will E. Orgain, for appellant. V. A. Collins and Joe W. Thomas, for appellee.

PLEASANTS, C. J. This is an action of trespass to try title brought by appellee against appellant to recover a tract of 160 acres of land, a part of the International & Great Northern survey No. 2, Tyler county. The only issue in the case is that of limitation. Appellant has a record title to the International & Great Northern survey before mentioned, and appellee was not entitled to recover the land sued for unless he has acquired title thereto under the 10-year statute of limitation. There was a trial jury in the court below which resulted in a verdict and judgment in favor of plaintiff.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

The facts disclosed by the record upon the issue of limitation are as follows: The International & Great Northern survey, of which the land in controversy is a part, lies immediately west of the lower Addison Sapp survey, the west line of the Sapp being the east line of the International & Great Northern survey. Another Addison Sapp survey known as the "upper Addison Sapp" lies immediately north of the lower Sapp and north of that portion of the International & Great Northern in controversy in this suit, the south line of the upper Sapp being the north line of the lower and the 160-acre tract in controversy. In 1879, T. E. Goolsbee, whose wife owned 120 acres of land in the lower Sapp survey adjoining the International & Great Northern survey, went upon the land in controversy, and made improvements thereon and on the adjoining land of his wife. He built a dwelling house just over the line of the Sapp on the land in controversy and within a short distance of its northeast corner, and inclosed and put in a field of about 35 acres on his wife's land in the Sapp survey. The house was not inclosed with the field, but was in a smaller inclosure of about two acres, not more than three-fourths of which was on the land in controversy. This inclosure was 134 varas from north to south and 80 varas from east to west, and did not at any point extend more than 60 varas over on the land in controversy. Within this small inclosure and on the land in controversy he built a smoke-house, a crib, and a potato house. A few years after he built his dwelling house he made an addition to it which extended over on his wife's land. He also built a barn and shop on his wife's land within said inclosure. His orchard and garden were also within said smaller inclosure and included the land upon both surveys. There was a lane or roadway about 40 feet wide between the field and the inclosure around the houses, garden, and orchard. When he made this settlement he knew where the line of the Sapp survey was, and intended to build his house on the International & Great Northern survey for the purpose of acquiring title to 160 acres thereof by limitation. The evidence is sufficient to sustain the finding that more than 10 years before the institution of this suit T. E. Goolsbee had the 160 acres in controversy surveyed and the corners marked and that he continuously claimed this 160 acres for more than 10 years prior to August 16, 1904, when he and his wife conveyed it to appellee. This suit was brought in December, 1904. During all of the 10 years in which T. E. Goolsbee claimed the land, the premises before described were occupied and used by him, or by tenants under him, but no possession, use, or occupancy was shown of any portion of the land than the small strip before described.

Under its first assignment of error appellant assails the judgment upon the ground that the possession and use by appellee's vendor, T. E. Goolsbee, of the small portion of the land in controversy before described was not sufficient to give notice to appellant that Goolsbee was claiming 160 acres of its land, and therefore could not, under the 10-year statute of limitation, give Goolsbee constructive adverse possession of that portion of the 160 acres not actually occupied by him. Upon a former appeal of this case a judgment of the court below in favor of plaintiff was reversed and cause remanded. The evidence upon that trial failed to show that T. E. Goolsbee was claiming the specific tract of 160 acres described in the petition during the 10 years of his occupancy of the small portion thereof before described. Rice v. Goolsbee, 45 Tex. Civ. App. 254, 99 S. W. 1031. The question we are now called upon to decide, if presented upon that appeal, was not passed upon. In the case of Bracken v. Jones, 63 Tex. 184, our Supreme Court held that one could not acquire title by limitation to 160 acres of his neighbor's adjoining land by inclosing and cultivating with land of his own 4 acres thereof for more than 10 years. The ground upon which this decision was based was that the inclosure of so small a portion of land with land belonging to the trespasser was not notice to the owner of a claim to any portion of his land outside of such inclosure. In discussing the question Judge Willie says: "It can scarcely be said that in such a case as the present the possession is notorious, visible, and distinct so as to fulfill the requirements of the 10-year section of the statute of limitation. Whilst the true owner is chargeable with a knowledge of the boundaries of his land, he can hardly be affected with notice that a neighbor, who has encroached a few feet upon his tract, is doing so for the purpose of acquiring title to 640 acres of it. He would rather impute it to a mistake on the part of the apparent trespasser as to the division line between them. Whilst this might not excuse the party trespassed upon for not asserting his right to the land actually occupied by the trespasser, it would certainly save him from such consequences as the loss of a section of his land. The party encroaching would be entitled to no more than the land actually occupied by him."

We think the reasoning of Judge Willie in the case cited is applicable to the facts of this case. The possession of T. E. Goolsbee of the small strip of the land in controversy cannot be disassociated from his possession and use of the larger tract owned by his wife, and the facts of this case present prima facie merely a case of a slight encroachment by an adjoining landowner upon the land of his neighbor. Giving full force to the presumption that the owner knows the location of the boundary lines of his land (a presumption which appears to the writer

to be violent when the land is unoccupied and its lines are not marked, and their location can only be fixed by course and distance from marked corners or other known and fixed objects), we do not think the occupancy by Goolsbee of the small strip of land before described should be held sufficient to give notice to the owner of the International & Great Northern survey that such occupant was claiming 160 acres of his land. If the owner of the International & Great Northern survey, knowing the exact location of his line, had gone upon his land and observed that in building his dwelling house Goolsbee had placed it on the line, one portion of the house being on one survey and the remainder on the other, and that the inclosure surrounding said house and the outhouses used in connection therewith were similarly situated—that is, some of them on one survey and some on the other—while the field which formed much the larger portion of the inclosed lands was entirely on the land owned by Goolsbee's wife, we think such owner would have reasonably concluded that this small encroachment upon his land should be imputed to mistake on the part of Goolsbee as to the exact location of the line of his wife's land. The case would be different if Goolsbee had not owned and cultivated the larger portion of the land embraced in the inclosure, because in that event the owner of the land in controversy would not have likely been misled as to the purpose and intent of the occupancy of his land by Goolsbee. The encroachment in this case was much less in extent than that in the case of Bracken v. Jones, supra, and we think the extent of the encroachment, and not the character of the use to which the land covered thereby is put, should determine its sufficiency as notice of adverse claim by constructive possession of land not actually occupied.

It seems to us that the owner of land thus held by a trespasser would be more likely misled by the situation shown by the facts of this case than by an encroachment consisting only of inclosure and cultivation of his land. The fact that the dwelling house was partly on one survey and partly on the other, and that the outhouses used in connection with the home were similarly situated would, we think, naturally lead such owner to suppose that the trespasser was on his land by mistake, because it would be unreasonable to presume that one claiming land and intending to acquire title thereto by limitation should designedly so place his improvements as to render such intention doubtful. If the claimant's improvements are designedly placed in this way it should be regarded as an attempt to acquire the land of another by trick or artifice, and the statute should not be made to subserve such purpose. It cannot be said that the possession shown in this case was of that fair, open, and visible character necessary to constitute adverse possession under our statute of limitation, of any portion of the land in controversy outside of appellee's inclosure. Bracken v. Jones, 63 Tex. 184; Tucker v. Smith, 68 Tex. 473, 3 S. W. 671; Titel v. Garland, 99 Tex. 201, 87 S. W. 1152; Downs v. Powell, 116 S. W. 873.

The evidence in the case being undisputed and the facts fully developed, the judgment of the court below should be reversed, and judgment rendered in favor of appellant for all of the land in controversy except that portion within appellee's inclosure, and it has been so ordered.

Reversed and rendered.

### On Motion for Rehearing.

At a former term of this court we affirmed the judgment of the court below as to a part of the land involved in this suit and reversed said judgment and rendered a judgment for appellant for the remainder of said land. Appellee in due time filed a motion for rehearing, and the decision of this motion was postponed, and the motion carried over from term to term by orders of this court made and entered in the minutes of the court. The nature and result of the suit and the material facts shown by the evidence are sufficiently stated in our former opinion.

As shown by our former opinion herein, we reversed and rendered the judgment of the court below as to all of the 160 acres of land involved in the suit except that portion covered by appellee's improvements and shown to have been in his actual possession, on the ground that the small amount of appellant's land shown to have been in appellee's possession was, as a matter of law, insufficient to charge appellant with notice of appellee's claim to 160 acres of his land. In view of the holding of the Supreme Court in the recent case of Smith v. Jones, 132 S. W. 469, we have concluded that we erred in reversing the judgment on this ground. The possession shown by the evidence was sufficient to raise the issue of notice to appellant of the adverse claim of appellee to the whole of the 160 acres, and that issue having been decided by the jury in appellee's favor, and the sufficiency of the charge submitting said issue not being complained of, the judgment should not be reversed on this ground.

While the undisputed evidence shows continuous use and cultivation of the field on the Sapp survey since 1879, there is evidence in the record which would sustain a finding that appellee's improvements on the 160 acres of land were unoccupied, and no part of said 160 acres was used or cultivated by appellee or any one for him from the spring of 1901 to the spring of 1902. During this time appellee's farm on the land owned by his wife in the Sapp survey was cultivated by R. L. Pope as a tenant of appellee. Pope testified: "I believe that Mr. Goolsbee moved off of that place in 1899. It was the last part of

the year, I think, that Mr. Goolsbee moved off. Then Hy. Cluff moved on it, and was there the year 1900 is the way I remember it; and Henry Cluff left there in March or April of the next year, and he was on that place one year and then up until March or April of the next year, making it 1901. I had place then for the balance of the year. Q. What did you have—did you have anything to do with the patch and all west of the house, did you work any part of that?. A. No, sir. (Plaintiff objects to that as leading.) Witness states: The land lying east of the house, on the east side of the road is the land that I worked. There wasn't any land worked west of the road after I had taken charge of it. I don't think there was any garden; I don't remember about that very sure, and won't say positive. There was no one living there in 1901. The first party that moved in there after Henry Cuff moved out I think was Bryant Jefferies. He moved in there in the spring of the next year, 1902, I believe it was. I do not remember what month it was; it was tolerable early in the spring, about March or April. He moved in there about 10 or 11 months—probably 12 months —after Henry Cluff left the place, but I couldn't say as to what time he went there, because I don't remember." The evidence does not conclusively show a claim by appellee and his grantor to the specific tract of 160 acres in suit for 10 years prior to the spring of 1901. T. E. Goolsbee, from whom appellee purchased, testified that he did not claim this specific 160 acres until he had it surveyed, and that he had the survey made in the summer of 1890 or 1891. The surveyor who did the surveying testified that according to his recollection he made the survey in 1896. Upon this testimony the jury might have found that appellee did not claim the specific 160 acres sued for until 1896. If this is true, it follows that a break in the possession and occupancy of the land from the spring of 1901 to the spring of 1902 would defeat appellee's claim of title by limitation.

Such being the state of the evidence the appellant requested the court to charge the jury as follows: "You are instructed that the possession, use, and enjoyment of the farm on the Addison Sapp survey is not such possession and enjoyment and use as will extend to any part of the 160 acres on the I. & G. N. No. 2." The facts above stated called for this charge, or one of similar nature, and it was error for the court to refuse to give it. This error requires a reversal of the judgment.

At the last sitting of this court we entered an order granting appellee's motion for rehearing and affirming the judgment of the court below. That order is set aside upon our own motion, and in lieu thereof it is ordered that the motion for rehearing is granted, and the judgment of the court below reversed and the cause remanded.

Reversed and remanded.