STEVENS v. PEDREGON et al.†

(Court of Civil Appeals of Texas. El Paso. Oct. 12, 1911. Rehearing Denied Oct. 25, 1911.)

1. APPEAL AND ERROR (§ 1011*)—FINDINGS—CONCLUSIVENESS.

A finding on conflicting evidence is conclusive on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983–3989; Dec. Dig. § 1011.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error granted by Supreme Court.

2. ADVERSE POSSESSION (§ 13*)—POSSESSION—REQUISITES.

Possession, to be adverse within Rev. St. 1895, art. 3349, defining it as the actual and visible appropriation of land, commenced and continued under a claim of right, inconsistent with, and hostile to, the claim of another, must be actual, continued, visible, notorious, distinct, and hostile, and mere occasional grazing is not sufficient, but continued cultivation is sufficient, as well as any visible and notorious acts evidencing an intention to claim ownership and possession, and an inclosure is only an act indicative of possession and claim of ownership.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 65–76; Dec. Dig. § 13.*

For other definitions, see Words and Phrases, vol. 1, pp. 227–235; vol. 8, p. 7568.]

3. ADVERSE POSSESSION (§ 66*)—EXTENSION OF POSSESSION.

Where a purchaser of a survey used and cultivated continually an adjacent survey containing less than 160 acres and claimed the entire survey as his own, his possession extended to the limits of the survey, and was not confined to the land actually cultivated.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 371–383; Dec. Dig. § 66.*]

4. ADVERSE POSSESSION (§ 110*)—PLEA FOR LESS THAN 160 ACRES—REQUISITES.

A plea of limitations for less than 160 acres need not describe by metes and bounds the land claimed, though where the tract claimed contains more than 160 acres, and there is no written memorandum of title, claimant must, under Rev. St. 1895, art. 3344, accurately describe the 160 acres to which he is restricted.

[Ed. Note.—For other cases, see Adverse Possession, Dec. Dig. § 110.*]

5. APPEAL AND ERROR (§ 1071*)—ERRONEOUS FINDINGS—EFFECT.

An erroneous finding on a material fact is ordinarily ground for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4234–4239; Dec. Dig. § 1071.*]

6. APPEAL AND ERROR (§§ 1010, 1071*)—HARMLESS ERROR—ERRONEOUS FINDINGS.

Where the finding of adverse possession by cultivation long enough to give title is supported by evidence, the appellate court must assume the truth of the finding, and hence any error in a finding as to the time of construction of a house on the premises is immaterial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3982, 4234–4239; Dec. Dig. §§ 1010, 1071.*]

7. ADVERSE POSSESSION (§ 85*)—EVIDENCE—ADMISSIBILITY.

On the issue of adverse possession of uninclosed land, evidence that stock was not permitted to run at large where the land was situate, and that it was not customary for farmers to fence their lands, was admissible.

[Ed. Note.—For other cases, see Adverse Possession, Dec. Dig. § 85.*]

8. APPEAL AND ERROR (§ 1052*)—HARMLESS ERROR—ERRONEOUS ADMISSION OF EVIDENCE.

Where there is ample proper evidence to sustain the findings of the court trying the case without a jury, error in admitting testimony is not reversible, unless it affirmatively appears that the improper testimony was considered by the court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4171–4177; Dec. Dig. § 1052.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Action by J. W. Stevens against Catarino Pedregon and another. From a judgment for defendants, plaintiff appeals. Affirmed.

Jones & Jones, for appellant. T. C. Lea and W. B. Ware, for appellees.

HIGGINS, J. This is an action of trespass to try title, brought by appellant against appellees, to recover a 17-acre tract of land 6 miles east of the city of El Paso, in the Rio Grande valley, and known as survey 215; the suit being filed August 24, 1910. The case was tried without aid of a jury, resulting in judgment for defendants, based upon plea of the 10-years statute of limitation.

The findings of fact and conclusions of law of the trial court are as follows:

"(1) The plaintiff, J. W. Stevens, is the record owner of said land, having bought the same from James A. Tays, administrator of the estate of Joseph W. Tays, on the 4th day of April, 1888, and paid therefor the sum of one hundred and seventy ($170.00) dollars.

"(2) I find that the defendant Catarino Pedregon on the 26th day of September, 1899, bought survey 214 from Mrs. Sarah J. Melendes, and that he immediately took possession of said survey 214, to wit, on the 26th day of September, 1899, and has been living with his family on said survey 214 ever since, and that said survey 214 immediately joins survey 215 on the west.

"(3) I find that the defendant Catarino Pedregon was advised by said Mrs. Sarah Melendes that survey 215 was not hers, and that if he would take possession of it and plant it and use it that he could become the owner of it by limitation, and that immediately after he took possession of survey 214 he commenced to use, occupy, and cultivate said survey 215, and to claim the land as his own, this being about the 1st of October, 1899. I find: That he planted sugar cane, vegetables, beans, watermelons, and other crops on a part of survey 215, the land in controversy, each year from 1899 to the present time, and planted more or less of it each year as he had water to irrigate it, and that about the time he moved onto 214 he planted a vineyard which extended onto 215, and covered about two acres of said survey 215, and that the same has been on said survey 215 and cultivated by Pedregon ever since that time.

"(4) The defendant Catarino Pedregon built a house on said survey 215 in the fall of 1899, near the center of the survey, and occupied said house by his tenants for about seven years, and then tore the house down and built another house a little further back on the property, which has remained on the

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

land ever since. That none of the land was fenced until about two years before the filing of plaintiff's suit. That about that time defendant Pedregon fenced the land.

"(5) The county road, running from El Paso, Tex., down the Rio Grande valley, runs through the northern part of the land in controversy, and is the main highway of travel from El Paso to the east, and is used by the public generally traveling up and down the Rio Grande valley east of El Paso. That all parts of this land could be seen from this road, and that the said land in controversy is about six miles east of the city of El Paso, and that the country is densely populated, and that all the surrounding land is cultivated by farmers raising alfalfa, fruit, vegetables, and other crops, and that it was not customary to fence lands in the valley until about three years before plaintiff's suit.

"(6) The Galveston, Harrisburg & San Antonio Railroad track runs immediately north of the land in controversy, and about 100 feet from the line.

"(7) I find that about two years before the filing of the plaintiff's suit in this cause the defendant Catarino Pedregon sold to the defendants F. G. Alderete and Ike Alderete that portion of the survey in controversy lying between the county road and the railroad track, and that said defendants F. G. Alderete and Ike Alderete have been in possession of the same by their tenants, planting the same every year since they have had it with vegetables and other farm products as are raised in that valley, and that their possession of said part so bought by them dates from the time of their purchase from their codefendant Pedregon.

"(8) The possession, use, cultivation, and occupancy of said land by the said defendants in the manner above set out was undisputed, peaceable, and adverse from the fall of 1899 until the filing of the plaintiff's suit on the ——— day of ———, 1910, except that about two years before the filing of plaintiff's suit plaintiff's son demanded the land as his father's property, but defendant Pedregon refused to give it up claiming it as his own.

"Conclusions of Law.

"(1) Based on the foregoing findings of fact, I conclude that the defendant's title by limitation is perfect as against the plaintiff's claim of ownership."

We adopt all of the conclusions of fact of trial court, except "the defendant Catarino Pedregon built a house on said survey 215 in the fall of 1899, near the center of the survey," and, in lieu thereof, find that the house was built on the land about seven years only prior to the institution of the suit. In 1908 Pedregon conveyed a portion of the land in controversy to his codefendants, F. G. and Ike Alderete. Upon trial it was admitted by defendants that plaintiff was the owner of the record title and entitled to recover, unless barred by the 10-year statute of limitation, which was pleaded in bar of such recovery. The testimony abundantly supports all of the conclusions of fact of the trial court with reference to the cultivation and user by defendants of the premises, except as to the time the house was built. The testimony shows, and appellees concede, that the house was not built until about seven years prior to the institution of the suit, so that, in order to support their plea of limitation, appellees must rely upon the possession evidenced for about three years by cultivation alone.

It is contended by appellants that the possession evidenced by cultivation alone, unaccompanied by inclosure or residence upon the land in person or by tenant, is not the adverse possession contemplated and required by our statute; that it is not actual possession, nor is it of that exclusive, continuous, notorious, and hostile character which must exist in order to support the statute. With reference to cultivation and user, the testimony shows that on September 26, 1899, defendant Pedregon acquired survey 214 which lies west of and immediately joins survey 215, and that he immediately took possession of 214 on that date, and has been living with his family on 214 ever since. In March, 1900, he planted a vineyard on survey 214, which extended over onto 215, which vineyard has been in constant cultivation ever since that date; that about two acres of this vineyard was on 215; that at the time Pedregon acquired and moved upon 214 he began to cultivate 215, planting and cultivating sugar cane, corn, vegetables, beans, watermelons, and other things; that he grazed and put his animals upon that portion of the land which he did not cultivate and plow; that he cultivated all of survey 215 except some high places upon the land. The amount cultivated and planted also varied with the quantity of water in the irrigation ditch available for the irrigation of the land. Those portions of the land not cultivated, as stated above, were covered with weeds and mesquite brush; and the cultivation of the land was by the defendants in person and by tenants. Since the building of the house upon the land the same has been occupied by tenants of defendant. Prior to the time Pedregon acquired 214 he had cultivated and used the same as a tenant of a Mrs. Melendes from whom he acquired the same, and while he was cultivating the same as her tenant, he also cultivated and used 215 for her. Ever since 1899 Pedregon claimed the land and has used and cultivated it to the exclusion of every one else, and was not interrupted in such use and cultivation. In 1907 the land was inclosed by a fence and in 1903 a house was built upon the land, which has been continuously occupied by tenants since its erection. The exact amount of the land in cultivation is not disclosed by

the testimony, but it is apparent from the testimony of the defendants and their witnesses that the major portion of the land was in cultivation constantly from 1899 to the date of the filing of the suit in 1910.

[1] The cultivation and user of the land as stated above is sharply contradicted by the testimony of witnesses for the plaintiff, who testify to having been upon the land within the last three years and seeing no evidence of cultivation, but as to the issue thus raised this court has nothing to do; the same having been decided by the trial court by its conclusions of fact in favor of defendants. From the foregoing statement it is apparent that the land had no house upon it, and was uninclosed during a portion of the time relied upon to give title by limitation, and that during this period of time the only facts evidencing possession were the cultivation, as above detailed, and grazing of the uncultivated portions.

[2] "Adverse possession," as defined by our statute, is "an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." Article 3349, R. S. 1895. Under this statute it has been repeatedly held that such possession must be actual, continued, visible, notorious, distinct, and hostile. Bracken v. Jones, 63 Tex. 184. It is well settled, too, that mere occasional grazing is not sufficient. It is not necessary, in order to have actual possession, that the land be inclosed, or that a house be built thereon and occupied. Inclosing and building of themselves do not constitute possession, but when accompanied by actual and continued use is the most satisfactory and distinct evidence thereof, and it seems to be equally well settled, though not distinctly held in this state, that continued cultivation is sufficient and constitutes actual possession. Dunn v. Taylor, 102 Tex. 80, 113 S. W. 265; 1 Am. & Eng. Enc. Law (1st Ed.) p. 259; 1 Cyc. p. 987; Angell on Limitations, par. 392. No particular act or series of acts are necessary to be done on the land in order that the possession may be actual. Any visible and notorious acts which clearly evidence the intention to claim ownership and possession will be sufficient to establish the claim of adverse possession. A fence or inclosure is not an essential element of adverse possession, but is only one of many acts indicative of possession and claim of ownership. Actual possession depends largely upon the nature of the land and the uses to which it would naturally be put. Facts which would constitute actual possession of land in the country might not be sufficient in case of property in a city or town. The rule of law is the same in both instances, but the evidence necessary to prove the fact is different and the test is: Has the adverse possession, considering the nature, situation, and use of the land, been actual, exclusive, continuous, notorious, and

hostile? If so, the requirements of the law are met. The objection is not well taken that cultivation, of necessity, does not meet the requirements of continued possession. Interruptions of possession, of a temporary nature and of short duration, due to changes in tenants, and temporary breaks in inclosures, have never been held to prevent the operation of the statute, and in Dunn v. Taylor, supra, it is said: "When yearly crops are raised, it may be that actual occupancy of a tenant for the time between the harvesting of one crop and the preparation of another should not be held to be essential. In such cases the appearances on the land itself would probably show the purposes for which it is used." Continuous cultivation fulfills all of the requirements of the statute, requiring "an actual and visible appropriation of the land," and the proof in this case shows that it was commenced and continued under a claim of right, inconsistent with and hostile to the claim of any one else. It was visible, notorious, and distinct. In this connection it should be noted that cultivation of one-tenth of the lands referred to in articles 3345, 3346, R. S., render an actual inclosure and segregation from larger tracts unnecessary. This is not decisive, but it is very pertinent as showing the weight attached to cultivation by the Legislature.

[3] It is contended, however, that appellees' possession did not extend beyond the limits of the land actually cultivated; that, inasmuch as the limits of their claim were not definitely fixed by an inclosure or written memorandum of title, there could be no constructive possession, and they were limited in their possession to the land actually cultivated. This position is not well taken, and their possession extended to the limits of the tract in controversy, it being all claimed and less than 160 acres. Article 3344, R. S.; Giddings v. Fischer, 97 Tex. 184, 77 S. W. 209; Nativel v. Raymond (Civ. App.) 59 S. W. 311; Parker v. Cameron, 39 Tex. Civ. App. 30, 86 S. W. 647; Doom v. Taylor, 35 Tex. Civ. App. 251, 79 S. W. 1086; Webb v. Lyerla, 43 Tex. Civ. App. 124, 94 S. W. 1095. It is well settled that the inclosure, cultivation, and enjoyment of a small strip by the owner and occupant of an adjoining tract who has extended his inclosure a short distance over the line, whether such extension was by design or mistake, is not sufficient to give notice to the owner whose property is thus invaded that the person so occupying such strip is asserting a claim to any portion of the land outside of his inclosure. Downs v. Powell, 54 Tex. Civ. App. 119, 116 S. W. 874; Bracken v. Jones, 63 Tex. 185; Tucker v. Smith, 68 Tex. 473, 3 S. W. 671; Rice v. Goolsbee, 45 Tex. Civ. App. 254, 99 S. W. 1031; Titel v. Garland, 99 Tex. 201, 87 S. W. 1152. The rule laid down in these cases would apply if the appellees relied only upon the possession evidenced by

the vineyard, which extended from 214 onto 215, but there is evidence of abundant additional cultivation.

[4] Appellant complains that the plea of limitation is insufficient because it fails to describe by metes and bounds the land claimed. The rule laid down in the cases cited by appellant applies only when the tract claimed contains more than 160 acres, and there is no written memorandum of title. In such case, under article 3344, R. S., the claimant is permitted to hold only 160 acres, and it is held that he must accurately describe in his plea the 160 acres which he is restricted to under the statute. Giddings v. Fischer, 97 Tex. 184, 77 S. W. 209. The trial court erred in its finding of fact that the house upon the premises was built in fall of 1899, and it is urged that this is reversible error.

[5] An erroneous finding upon a material fact is ordinarily ground for reversal, but under our view of the case the time of the building of the house is immaterial.

[6] If the facts in regard to cultivation as found by the trial court were true, and, being supported by the evidence, this court must assume the finding to be correct, then title by limitation, based upon those facts alone, vested in the defendants as a matter of law, and it is immaterial when the house was built, or whether it was ever built.

[7] Error is assigned to the admission of testimony to the effect that stock were not permitted to run at large where this land is situate, and that it was not customary for the farmers there to fence their lands until about three years ago. We think these were circumstances which might properly be considered in determining the question of adverse possession. 1 Am. & Eng. Enc. Law (1st Ed.) p. 263. However, if it be conceded that the testimony was improper, it is not reversible error.

[8] The case was tried before the court, and there was ample evidence properly before the court to sustain his findings, and it would be presumed that he based his findings upon the evidence properly before him. Railway Co. v. Rutherford, 28 Tex. Civ. App. 590, 68 S. W. 826; Beham v. Ghio, 75 Tex. 90, 12 S. W. 996.

The only exception to this rule is in cases where it affirmatively appears that the improper testimony was taken into consideration by the court.

Affirmed.