**STATE NAT. BANK OF HOUSTON v. WOODFIN.**

No. 11087.

Court of Civil Appeals of Texas. Galveston.

Dec. 5, 1940.

Rehearing Denied Jan. 9, 1941.

Fulbright, Crooker, Freeman & Bates, of Houston (Paul Strong, of Houston, of counsel), for appellant.

Fowler & Conn, of Houston (Ralph L. Fowler, of Houston, of counsel), for appellee.

MONTEITH, Chief Justice.

E. D. Woodfin, appellee herein, brought this action against appellant, the State National Bank of Houston, for the recovery of the market value of 31 shares of stock of the Humble Oil & Refining Company, alleged to have been converted by appellant, and for the cancellation and return of a note for the sum of $815 executed by appellee in its favor.

Appellee alleged that in October, 1937, he had arranged with appellant for a loan for the purpose of purchasing certain, shares of stock of the Kirby Petroleum Company, such loan to be represented by a note to be collaterally secured by both 31 shares of stock of the Humble Oil & Refining Company and the Kirby Petroleum Company stock to be purchased; that it was understood and agreed that the proceeds of said loan were to be paid by appellant bank for appellee to the brokerage firm through which said stock was to be purchased, only upon the actual physical delivery of said stock to appellant; that in furtherance of said agreement, appellee executed and delivered to appellant a collateral note in blank and a collateral assignment of both the Humble and Kirby stock with the express understanding that said note was not to be effective until said Kirby stock was delivered to appellant. Appellee alleged that appellant had paid the proceeds of said loan to said brokers with-

out receiving said Kirby stock and had converted his Humble stock by refusing to return it to him, and that on April 4, 1938, it had sold 17 shares of said Humble stock.

Appellant answered by general denial and general demurrer. It alleged that, acting under appellee's instructions, it had advanced to his brokers the sum of $815 for the purchase of 200 shares of Kirby Petroleum Company stock for which appellee had executed his note and deposited as collateral 31 shares of Humble Oil & Refining Company stock. It specially pled a custom to collect the full purchase price for stock purchased prior to its transfer and delivery where money was advanced for its outright purchase in a customer's name. It alleged that appellee had declined to pay said note at maturity and that 17 of said 31 shares of Humble Oil & Refining Company stock, which had been pledged as security therefor, had been sold under a collateral pledge agreement. The remaining 14 shares of Humble stock were tendered to appellee.

In answer to special issues submitted, the jury found that the agreement between appellant and appellee was that the bank would pay them money only upon delivery to the bank of the Kirby stock; that the directions given to appellant by appellee concerning the delivery and payment for the Kirby stock were not that appellee would go over to Sterling & Baker and put in an order for said Kirby stock and that they would deliver the stock to appellant and pick up the check; that appellant did not in good faith and in the exercise of ordinary care interpret appellee's directions to mean that delivery of the Kirby stock was not required before making payment for it, and that appellant did not honestly believe that it was following appellee's directions when it allowed the money to be paid to Sterling & Baker.

Based on the jury's findings, judgment was rendered in appellee's favor for the sum of $1,043.04. He was awarded the title and possession of the 14 shares of Humble stock tendered him by appellant and said note for the sum of $815 was cancelled and annulled.

The record shows that Sterling & Baker, the brokers through whom appellee ordered the Kirby stock in question, notified appellant that said 200 shares of stock had been purchased for appellee by their brokers in New York and that the certificate therefor was being sent to Houston to be re-issued in appellee's name. On October 21, 1937,

appellant delivered its check for the sum of $815 to a representative of Sterling & Baker and received from him a receipt therefor obligating Sterling & Baker to deliver said 200 shares of Kirby Petroleum Company stock to appellant. On November 2, 1937, Sterling & Baker were adjudged bankrupt and were placed in the hands of a receiver. Said 200 shares of Kirby Petroleum Company stock were never delivered to either appellant or appellee.

Appellant sets up as a defense to appellee's cause of action a custom, alleged to have existed in Houston and elsewhere in the buying and selling of stocks, that where money was advanced for the purchase of stock in a purchaser's name, it was customary to collect the full purchase price therefor prior to its transfer and delivery, and contends that said custom must be read into appellee's alleged agreement with appellant and that, therefore, appellant was not obligated thereunder to withhold the payment of the purchase price of said stock from appellee's brokers until said stock was delivered to it.

█ It has been uniformly held in this State that a custom, in order to constitute an element of contract, must be either shown to have been known personally to the parties to the contract, or to have been so general and universal that the parties are charged with knowledge of its existence to such an extent as to raise a presumption that they dealt with reference to it.

While the record in the instant case shows said custom to have been recognized in brokerage and banking circles, there is neither pleading that appellee was familiar with the custom relied on, or that it was so general and universal as to charge appellee with knowledge of it, nor is there evidence or circumstances which would charge him therewith. The record shows that he had been employed by an oil company for many years. He testified that he had never bought stocks through a broker prior to the purchase of the Kirby Petroleum Company stock involved herein, and that he did not know anything about any custom of stock brokers. Anderson v. Caulk, Tex.Civ.App., 5 S.W.2d 816; McNabb v. Woolfolk, Tex.Civ.App., 240 S.W. 1043.

█ A valid custom concerning the subject matter of a contract, knowledge of which may be imputed to the parties, is, according to a general rule, incorporated into the contract by implication. 42 Tex.

Jur. 842. This rule is applicable, however, only when there is nothing in the agreement to exclude such inference. Murray Co. v. Gilbert, Tex.Civ.App., 80 S.W.2d 805; and evidence of a custom is not competent to contradict the plain and unambiguous terms of an express contract or to vary, control, impair, restrict, or enlarge the explicit language of the agreement. 42 Tex.Jur. 847; Fortson v. Williams, Tex. Civ.App., 128 S.W.2d 89, and cases therein cited.

█ In the instant case, the appellee pled the following express agreement: "Plaintiff now alleges that said note was executed by him for the express and sole purpose of purchasing 200 shares of the capital stock of the Kirby Petroleum Company, that it was expressly agreed between plaintiff and defendant that the proceeds of such loan was to be paid to said brokers only upon the actual physical delivery of said stock to defendant, and only in such event." The jury found, upon sufficient evidence, in answer to special issue No. 1 submitted by the court, that the agreement between Mr. Oliver (the representative of appellant bank) and Mr. Woodfin (appellee) was that the bank would pay the money only upon delivery to the bank of the Kirby stock. The terms of the agreement pled by appellant are plain and unambiguous. Under the above authorities and the facts and circumstances in this case, we do not think that evidence of the custom relied upon by appellant is competent to vary or modify the terms of the alleged agreement.

Appellant assigns error in the action of the trial court in submitting to the jury special issue No. 1, for the alleged reason that said issue assumed that there was an agreement between the representative of appellant and appellee with reference to the time of payment for the stock in question, when this question was one of the disputed issues in the case.

Special issue No. 1 reads: "Do you find from a preponderance of the evidence that the agreement between Mr. Oliver and Mr. Woodfin was that the bank would pay the money only upon the delivery to the bank of the Kirby stock?" The jury answered said issue in the affirmative.

█ This contention cannot be sustained. While it is evident from a reading of this issue that it assumes the existence of an agreement between appellee and the representative of appellant, we think that it

is also evident that the agreement assumed that appellant was to advance funds to pay for said stock, which is admitted by both parties, and that said issue seeks to elicit from the jury an answer to the controlling issue in the case as to whether or not said stock was to be paid for only upon its delivery to the bank.

We are unable to sustain appellant's assignment of error to the action of the trial court in refusing to submit to the jury its requested special issue No. 15, for the reason that the substance of said requested issue was, we think, covered by special issue No. 1.

Special issue No. 15, requested by appellant, reads: "Do you find from a preponderance of the evidence that Mr. Woodfin intended in his own mind to require the defendant to actually receive the stock certificate before paying Sterling & Baker for it, but did not say anything to defendant about delivery before the bank paid for the stock?"

It is the well settled law in this state that it is not error for the court to refuse a requested issue which submits in a different form an issue which is covered by the court's charge. Maryland Casualty Co. v. Hill, Tex.Civ.App., 91 S.W.2d 391; Tennessee Dairies v. Seibenhausen, Tex.Civ.App., 99 S.W.2d 323; Arkansas Louisiana Gas Co. v. Max, Tex.Civ.App., 118 S.W.2d 383.

The decisions are also uniform in holding that a party is not entitled to the submission of two or more issues relating to the same ground of recovery or ground of defense. Consolidated Underwriters v. Christal, Tex.Civ.App., 135 S.W.2d 127; Guzman v. Maryland Casualty Co., 130 Tex. 62, 107 S.W.2d 356.

Appellant further assigns error in the action of the trial court in rendering judgment in favor of appellee, for the alleged reason that there is an irreconcilable conflict upon material issues in the jury's finding in answer to special issues No. 1 and No. 2.

Special issue No. 1 reads: "Do you find from a preponderance of the evidence that the agreement between Mr. Oliver and Mr. Woodfin was that the bank would pay the money only upon delivery to the bank of the Kirby stock?" To which the jury answered: "We do".

Special issue No. 2 reads: "Do you find from a preponderance of the evidence that

the directions, if any, given by Mr. Woodfin to Mr. Oliver, concerning the delivery of and payment for the Kirby stock, were that he (Mr. Woodfin) would go over to Sterling & Baker and put in an order for that and that they would deliver the stock to the State National Bank and pick up the check?" To which the jury answered: "We do not".

Our courts have uniformly held that apparent conflicts in the jury's answers should be reconciled, if this can be reasonably done in the light of the facts in the particular case, the pleadings, evidence, the manner in which the issues were submitted, and in view of the other findings when considered as a whole. It is further held that findings on ultimate facts control those on merely evidentiary issues and that specific issues will control general ones, and that, if by a reasonable interpretation of the findings, it appears that they are not in real and irreconcilable conflict, that they form the proper basis for judgment. Graham v. Hines, Tex.Civ. App., 240 S.W. 1015; Bragg v. Hughes, Tex.Civ.App., 53 S.W.2d 151; Aranda v. Texas & N. O. Ry. Co., Tex.Civ.App., 140 S.W.2d 236.

While a cursory inspection of the issues in question and the findings of the jury thereon suggest the possibility of a conflict between ultimate issues, after a thorough examination of the issues and the answers thereto, it is our conclusion that special issue No. 1, in which the jury found that there was an agreement that the bank would pay said funds only upon delivery of the Kirby stock, is an ultimate controlling issue in the case, and that special issue No. 2, in which the jury found that appellee did not inform the representative of appellant that he would go over to Sterling & Baker and put in an order for said stock and direct them to deliver the stock to the State National Bank and pick up a check in payment therefor, is an evidentiary issue and the answer thereto is not in conflict with the answer to special issue No. 1.

This conclusion is borne out by the answers of the jury to special issues Nos. 4 and 6, in which the jury found that appellant did not in good faith and in the exercise of ordinary care interpret appellee's directions to mean that delivery of the Kirby stock was not required before making payment for it and that appellant did

not honestly believe that it was following appellee's directions when it allowed the money to be paid to Sterling & Baker.

It follows from above conclusions that the judgment of the trial court should be in all things affirmed, and it is so ordered.

Affirmed.