WALKER et al. v. CITIZENS NAT. BANK
OF WACO et al.
No. 2795.

Court of Civil Appeals of Texas. Waco.
May 20, 1948.

Rehearing Denied June 10, 1948.

Woodrow F. Eason and W. L. Eason, both of Waco, for appellants.

Richey, Sheehy & Teeling and Scott, Wilson & Cureton, all of Waco, for appellees.

LESTER, Chief Justice.

The parties to this litigation will be referred to as follows: The Citizens National Bank as "the bank," Myrtice Walker as "the defendant", the other joint maker of the note sued upon, who has since died, as "the deceased", and the representatives of the estate of the deceased as "executors".

The bank sued the defendant and the executors of the estate of the deceased for an indebtedness represented by two notes, one a renewal note of $1,700, dated July 12, 1946, and a $2,000 note, dated August 16, 1946. It was alleged by the bank that the defendant and the deceased were joint makers of said notes and prayed for a joint and several judgment against the defendant and the executors of the estate of the deceased. The bank also alleged that the defendant had executed a deed of trust on certain property described to secure the payment of said notes, and sought foreclosure thereof.

The defendant filed an answer and cross-action, in which she alleged that she was only secondarily liable on said note, in that the deceased had given her the money and agreed with her to pay the notes when they became due.

The executors' contention is that the deceased was an accommodation maker of the notes sued upon and that his estate was only secondarily liable, and pleaded lack of consideration between the defendant and the deceased in respect to the gift and the agreement to pay the notes at maturity.

The defendant further pleaded that she applied to the bank for a G. I. loan in the sum of $8,000 for the purpose of building a home, and agreed to execute a deed of trust to secure said amount. The deed of trust was dated April 26, 1946, and contained the following provision, to wit: "This deed of trust shall secure in addition to the above indebtedness any and all other indebtedness of the undersigned to The Citizens National Bank of Waco now owing or which may hereafter become owing, whether evidenced by note, open account, overdraft, endorsement, surety, guarantor or otherwise." Concerning said clause she pleaded that it was placed in said instrument through the mutual mistake of the parties or through fraud on the part of the representative of the bank; that when she signed the deed of trust she did not know that it contained such a provision; that she was unable to read at the time as she had recently broken her glasses and was thereby prevented from reading the same; that it was contrary to the terms of the oral agreement between her and the bank in that it was the understanding of each that the deed of trust was to secure the $8,000 note and no more, and if she had known of said provision at the time she signed it she would not have so signed.

The court submitted the case to the jury upon the following issues:

(1) "Do you find from a preponderance of the evidence, if any, that Myrtice Walker Holmes did not know at the time she executed the G. I. deed of trust that it contained the following clause: 'This deed of trust shall secure in addition to the above indebtedness any and all other indebtedness of the undersigned to The Citizens National Bank of Waco now owing or which may hereafter become owing whether evidenced by note, open account, overdraft, endorsement, surety, guarantor or otherwise.' ?"

To which the jury answered: "She did know."

(2) "Do you find from a preponderance of the evidence, if any, that Myrtice Walker Holmes believed, when she signed the

G. I. deed of trust that it secured only the $8000.00 G. I. note?"

To which the jury answered: "No."

(3) "Do you find from a preponderance of the evidence, if any, that the defendant Myrtice Walker Holmes would not have signed the deed of trust had she known it contained the clause securing other indebtedness, if she did not know same?"

To which the jury answered: "She would have signed."

(4) "Do you find from a preponderance of the evidence, if any, that before the execution of the G. I. deed of trust the representatives of the bank did not advise Myrtice Walker Holmes that the deed of trust contained the clause relative to 'any and all other indebtedness'?"

To which the jury answered: "They did."

(5) "To you find from a preponderance of the evidence, if any, that the defendant Myrtice Walker Holmes would not have signed the $1700.00 renewal note had she known the deed of trust contained the provisions securing other indebtedness, if she did not know same?"

To which the jury answered: "She would have signed."

(6) "Do you find from a preponderance of the evidence, if any, that the defendant Myrtice Walker Holmes would not have signed the $2000.00 note had she known the deed of trust contained the provisions securing other indebtedness, if she did not know same?"

To which the jury answered: "She would have signed."

(7) "Do you find from a preponderance of the evidence, if any, that the defendant Myrtice Walker Holmes was at fault in not reading the deed of trust which she signed, if she did not read same?"

To which the jury answered: "She was at fault."

After the verdict was received the defendant filed her motion asking the court to render judgment for her non obstante veredicto refusing to foreclose the deed of trust lien, alleging that the answer to each issue failed to have support in the evidence. The court overruled her motion

and entered judgment for the bank for its debt, with foreclosure on the property, and provided that the judgment should first be satisfied from the proceeds of the foreclosure sale, secondly, upon execution against defendant, and lastly, against the estate of the deceased. The defendant filed her motion for a new trial, which was by the court overruled; hence this appeal.

The defendant's first contention is that the trial court erred in rendering judgment against her foreclosing the G. I. deed of trust lien on her homestead. Under this proposition she lists sixteen assignments of error, based upon the proposition that the answers of the jury and the judgment rendered by the court do not have support in the evidence.

The rule that prevails in Texas is that after disregarding all adverse evidence and considering only the evidence most favorable in support of the verdict and judgment, giving it all reasonable conclusions and inferences that might be drawn therefrom, if such evidence is of sufficient probative force that reasonable minds might differ as to the ultimate conclusion to be reached, it will be held that the evidence supports the verdict and judgment. Associated Employers Lloyds v. Self, Tex.Civ.App., 192 S.W.2d 902; Texas Employers Ins. Ass'n v. Moser, Tex.Civ. App., 152 S.W.2d 390; Associated Employers Lloyds v. Groce, Tex.Civ.App., 194 S. W.2d 103; Great American Indemnity Co. v. Beaupre, Tex.Civ.App., 191 S.W.2d 883.

Some of the evidence most favorable to such findings is that the form of deed of trust used in the instant case was one of the regular forms used by the bank in making loans of this kind; that the bank had used this form in making approximately 200 G. I. loans; that the one who made the loan had been instructed to use this form; that he prepared the instrument knowing that it contained the clause providing that it secured all past or future indebtedness; that after the papers were prepared he gave them to the defendant to read; that she took them and looked at them; that he did not do anything to prevent her from reading the deed of trust;

that several months after she executed the deed of trust she applied to the bank for the $2,000 loan, wanting it added to her G. I. loan of $8,000, but the report of her $8,000 loan had been sent in to the Veterans Administration and the bank did not believe it could add the $2,000 to her G. I. loan at that time; that she and the deceased then executed the note for said $2,000. It was without dispute that she signed the deed of trust and acknowledged the same before a notary public, and at that time she owed the $1,700 which is represented by the $1,700 note involved in this case. She received all of the money borrowed and appropriated it to her own use and benefit. The defendant testified on direct examination that she had recently broken her glasses and could not see to read at that time, but she testified that no one in the bank kept her from reading it; that she didn't ask any one to read or explain it to her and that she could have read it if she had wanted to. She testified on direct examination that she didn't read the instrument because she didn't have her glasses, but on re-direct examination she testified that she didn't read it because she was relying upon the representative of the bank as he was supposed to be the G. I. representative. There is evidence that the defendant was a woman with a great deal of business experience; that she had operated a cigar stand and had operated her own beauty parlor since 1932, with the exception of a little less than two years while she was in the service as a WAC. She had executed many notes and a few mortgages prior to the time she signed the deed of trust.

The defendant relies upon the following authorities: Rule 28, article 3713, 11 Vernon's Ann.Civ.Tex.Stats. p. 114; Cooper Grocery v. Strange, Tex.Civ.App., 4 S.W.2d 232, 237; Id., Tex.Com.App., 18 S.W.2d 609, 612; Kelley v. Ward, 94 Tex. 289, 60 S.W. 311, 313; Aetna Ins. Co. v. Brannon, 99 Tex. 391, 89 S.W. 1057, 1060, 2 L.R.A.,N.S., 548, 13 Ann.Cas. 1020, and others.

The evidence and findings of the jury in Strange v. Cooper, supra, which the defendant strongly relies upon, are somewhat different from the evidence and findings of the jury in the instant case. In the Strange v. Cooper case, Strange pleaded that Dugger represented to him that the guaranty he executed was for only $10,000; that Dugger was the agent of the Cooper Company, clothed with authority to make said representations; that he did not read the instrument because he didn't have his glasses, and that he signed it not knowing it contained a clause providing "any indebtedness created on this day or hereafter", but relied upon the representations of Dugger. The jury found all those issues in favor of Strange, which had sufficient support in the evidence. In the instant case the jury found that the defendant knew at the time she executed the deed of trust that it contained the clause providing for past and future indebtedness, and at the time she signed it she did not believe that it secured only the $8,000 note; that she would have signed it if she had known that it contained said provision; that she would have signed the $1,700 renewal note and the $2,000 note if she had known of said clause. The property here involved was not the homestead of the defendant at the time she executed the notes and the deed of trust, as she was a single woman at that time, having married her present husband on May 7, 1947.

■ If the defendant knew when she signed the deed of trust that it contained the provision relating to past and future indebtedness, as found by the jury, then there was no mutual mistake of the parties, nor fraud on the part of the representatives of the bank by inserting the clause in the instrument. First Nat. Bank of Corsicana v. Zarafonetis et ux., Tex.Civ. App., 15 S.W.2d 155, 157; Jones v. Guilford Mortgage Co., Tex.Civ.App., 120 S. W.2d 1081; Indemnity Ins. Co. of North America v. W. L. Macatee & Sons, 129 Tex. 166, 101 S.W.2d 553, 556.

■ Disregarding all adverse evidence and looking to that which is most favorable to sustain the findings of the jury, and giving it all reasonable conclusions that might be drawn therefrom, we are of the opinion that the verdict and judgment of the trial court have sufficient support in the evidence and that the court did not err in rendering

judgment against the defendant foreclosing the deed of trust lien on the property involved.

The defendant pleaded that the notes here in question were the primary obligation of the deceased, in that he gave her the full amount borrowed from the bank and he had her to sign the notes only as a matter of form; that he agreed with her to pay said notes as they matured. The executors, in their cross-action against the defendant, pleaded that she was the principal on the notes in question; that she received all the money advanced by the bank on the notes and used the same for her own use and benefit; that the deceased signed the notes as surety only; that he received no benefit from said money, directly or indirectly, and therefore there was no consideration as between the defendant and the deceased for his executing said notes and there was no consideration between the defendant and the deceased on which the executors could be held liable in any manner. They also pleaded: "These defendants further say that the deed of trust lien described in plaintiff's petition is a valid and subsisting lien on the property described and secured the indebtedness evidenced by the two notes sued on by plaintiff, and each of them. That said security inured to the benefit of the deceased and his estate as surety for said debt. These defendants further represent to the court that as between these defendants and Myrtice Walker, under the facts hereinabove set out, these defendants, for the purpose of protecting the estate of the deceased as surety on the indebtedness sued upon, has a valid and subsisting lien upon the property described in plaintiff's petition." They prayed that the defendant be found to be as principal on said notes and the estate of the deceased be found to be surety for said indebtedness, and that the deed of trust lien described in plaintiff's petition be first foreclosed and the proceeds from the sale applied to the payment of the judgment, if any, and that as between the defendant and the executors, that the executors have judgment over against said Myrtice Walker for any amount recovered against the estate of the deceased and that the court decree that the lien sued upon by the plaintiff be decreed a valid and subsisting lien to protect the estate of the deceased as surety on said indebtedness and that said lien be foreclosed as between the executors and the defendant Myrtice Walker.

█ To sustain her allegations that she was only secondarily liable for such indebtedness in that she signed as a matter of form and that the proceeds of the notes were delivered to her as a gift from the deceased with an agreement that he would pay the notes as they matured, the defendant offered to testify to certain conversations and transactions with the deceased. The executors objected to such testimony because it was in violation of art. 3716, Vernon's Ann.Civ.Stats. The bank objected to said testimony on the ground that as to it the testimony was hearsay. Article 3716 provides: "In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

The parties to this suit and the issues involved therein necessarily required a judgment to be rendered for or against the executors as such, and if against said executors, it would have been in favor of the defendant. Therefore, the proffered testimony was vulnerable to the above quoted article and the court properly excluded the same.

█ The defendant next offered in evidence certain letters and cards that she claimed to have received from the deceased. They did not bear his signature but they were all signed by a mark. This testimony was objected to upon the same ground. These letters were written long prior to the inception of the subject matter of this suit and were all dated on or prior to May 11, 1945. None of the correspondence made any reference to any phase of

the subject matter of this litigation whatsoever, and if the evidence had been admitted and taken in connection with the other evidence in the case, it would not have created an issue as to whether the defendant was secondarily liable for said indebtedness and it was not error upon the part of the court to exclude it.

The defendant's fifth point is: "The trial court erred in permitting the plaintiff to prove that it was the custom of other banks and lending institutions to insert in their deeds of trust a clause with reference to other indebtedness similar to the clause in the deed of trust in the instant case." As set out above, the defendant pleaded that the clause as to other indebtedness was inserted or permitted to remain in the deed of trust by mutual mistake of the parties, or if not by mistake, it was done through fraud on the part of the representatives of the bank. The bank denied the allegations both as to mutual mistake and fraud, and pleaded: "That the form of this note and real estate mortgage executed by the defendant Myrtice Walker to secure her real estate loan of $8000.00 is in the form generally and customarily used by the plaintiff and other banking institutions, and particularly the clause in said deed of trust which provides that the same secured any and all indebtedness then or thereafter owing by the maker thereof to the bank is a usual and customary form in bank mortgages, and particularly of the plaintiff, all of which was well known to the defendant Myrtice Walker, or by the exercise of ordinary care and diligence could have been known to her; that said contract was in writing and was signed by the defendant Myrtice Walker, and that if she did not read the contents thereof it was her own fault and not that of the plaintiff." The bank's vice-president, testifying for the bank on direct examination, testified that the form of the deed of trust that the defendant executed was one that it had printed to be used in making real estate loans, and that it was the form the bank used and that the bank used it in making G. I. loans and it had made approximately two hundred G. I. loans on the same form. On cross-examination of this witness he was asked:

"Q. Now, this deed of trust that Mrs. Walker signed is a private deed of trust that is used by your bank? A. Yes sir.

"Q. And it is not the form that was furnished you by the government or any of its agencies for G. I. loans? A. No sir, that is our own form."

The defendant's attorney then exhibited a blank form of deed of trust and interrogated the witness about it, over the objection of the bank and the executors. The questions and answers are as follows:

"Q. What does that say up there in the corner? A. It says V. A. Form 400-6341, Home Loan, August, 1946."

Whereupon said testimony was objected to and the defendant's attorney then stated: "This is a Texas form. There is 'Texas' printed over in this corner and shows it is a Texas form." This witness, on re-direct examination, over the objection of the defendant, was permitted to testify that it was the general custom of banks and other lending institutions to use the form of deed of trust and mortgages with a clause providing that it secured all past and future indebtedness. The defendant introduced the blank form of the deed of trust that he had interrogated the witness about and stated that it was for the purpose of showing that it did not contain the clause that was contained in the form used by the bank in this case; that he was showing that it was not the usual custom at all, and later made the statement that the defendant was taking the position that the Citizens National Bank was the only bank that makes G. I. Loans containing this clause. These remarks were made before the jury. Then another witness from the bank and a witness from the First National Bank of Waco were permitted to testify, over objections of the defendant, that it was the general custom of banks and other lending institutions to use a form with the provision that is under attack in this case.

The defendant, in support of this assignment, relies upon Tucker v. Smith, 68 Tex. 473, 3 S.W. 671, 674; Fortson v. Williams, Tex.Civ.App., 128 S.W.2d 89, 92; State Nat. Bank of Houston v. Woodfin, Tex.Civ.App., 146 S.W.2d 284, 286.

Tucker v. Smith, supra, was a trespass to try title suit in which evidence of a custom among Mexicans by which the bends in a river were held to belong to the owner of the land against which they abutted, was offered and rejected by the trial court. In passing upon this question the Supreme Court held that: "The rules of law applicable to the case gave to each party the land lying within the boundaries set forth in his title papers as established by proof. The proposed proof would have subverted this rule of law, as well as altered the legal effect of the deeds under which the parties claimed. That proof of custom cannot be admitted when it will have either of these effects is well settled in this state."

Fortson v. Williams, supra, was a suit on a note and for foreclosure of a mortgage on a truck. Appellee filed a cross-action in which he admitted the execution and delivery of said note and mortgage, and alleged affirmatively that appellants loaned him only $300; that they included in said note given therefor the amount of an insurance premium necessary to protect the mortgaged truck from damage or injury by collision or otherwise during the full term said loan was to run, and that they expressly agreed at the time to so insure said truck. In the alternative he alleged that if appellants did not expressly so agree, they impliedly did so; that such was their custom and course of business and the general custom in Navarro and adjoining counties. The court submitted issue No. 1 as to whether it was agreed and understood between the appellants' agent and appellee at the time that the agent was to procure a policy insuring said truck for the full insurable value thereof against loss or destruction by theft, fire and collision. The appellants objected to the issue on the ground that said issue as submitted was in substance whether it was agreed between the appellants' agent and the appellee that the agent was to procure insurance on appellee's truck for the full insurable value thereof against loss or destruction by theft, fire and collision. The grounds of appellants' objection to the submission of said issue in that form included assertions that such issue called for a finding by the jury which would in effect vary and contradict the terms of the written mortgage; that there was no evidence of an express agreement on the part of the agent to take out an insurance policy containing the provisions recited in said issue; that there was no evidence whether such insurance, if any, was to be for the full insurable value of the truck or merely sufficient to satisfy appellants' debt, and that such issue assumed that the policy to be taken out should cover the full insurable value of the truck and should indemnify against loss resulting not only from fire and theft but also from collision. The provisions of the mortgage required the carrying of insurance against loss by fire and theft but there was no requirement for insurance against loss resulting in whole or in part from collision, and no stipulation in the mortgage with respect to the amount of insurance to be carried. Appellee relied upon testimony tending to show custom to engraft upon the contract for insurance the specific elements embraced in said issue as submitted. This court, speaking through the late Chief Justice Gallagher, held that [Tex.Civ.App., 128 S.W.2d 92]: "Evidence of custom is not competent to contradict the plain terms of an express contract nor to vary, control, impair, restrict or enlarge the explicit language of the agreement. * * * The mortgage provided specifically for insurance against fire and theft. There is nothing therein requiring that any other form of insurance should be carried by appellee or procured by appellants at their option. Under the authorities above cited, an obligation to procure collision insurance, another and separate kind of indemnity, could not be imposed upon appellants by proof of custom alone."

The opinion in State Nat. Bank of Houston v. Woodfin, supra, involved the purchase of stock in the Humble Oil & Refining Co., and is to the same effect.

In the instant case the clause in question was clear and unambiguous and the testimony was not offered for the purpose of varying, impairing, restricting or enlarging the explicit language contained

therein, but it was offered in response to the defendant's contention that the clause was inserted or permitted to remain in the instrument by mutual mistake of the parties or through fraud of the representatives of the bank. We are of the opinion that this evidence was admissible on the issue of mutual mistake. As to its admissibility on the issue of fraud, the bank cites: Texas Law of Evidence by McCormick & Ray, p. 880, par. 684, as follows: "The habit or custom of a person in doing a particular act often has probative value in determining his conduct on an occasion in question:" and Encyclopedia of Evidence by Camp & Crow, Vol. 6, page 40, which provides: "Custom cannot sanction a fraud either in fact or in law, but in many cases evidence of a general custom or usage in vogue in the community in which the transaction occurs, or of a violation thereof in the particular instance, may be relevant and competent as tending to establish the fraud or some of its constituent elements. And it seems that proof of a compliance with a uniform and reasonable custom may be competent to refute the fraud charged."

But if we are in error in holding that the evidence was admissible on the issue of mutual mistake, we are of the opinion that it was not reversible error for the court to admit such testimony. Supported by sufficient evidence, the jury found that the defendant knew when she signed the deed of trust that it contained the clause in question and that she would have signed it if she had known that it contained said provision. Such findings were against the defendant on the issue of mutual mistake and also the issue of fraud, so the error, if any, on the part of the court becomes harmless.

The defendant says the case should be reversed because the court overruled her objection to Special Issue No. 7 of the court's charge; "that instead of submitting the issue on 'fault' it should have been submitted on negligence and proximate cause." The findings of the jury render this assignment immaterial and the same is hereby overruled.

We have carefully considered all points raised by the defendant, and finding no reversible error in the proceedings below, they are each overruled.

The judgment of the trial court is in all things affirmed.