**WOMACK v. WOMACK et ux.**

**No. 6415.**

Court of Civil Appeals of Texas. Texarkana.

Jan. 27, 1949.

Rehearing Denied Feb. 24, 1949.

T. D. Wells, of Paris, and C. C. McKinney, of Cooper, for appellant.

Leighton Cornett, of Paris, for appellees.

WILLIAMS, Justice.

Appellees, Sam B. Womack and Johnny Belle, his wife, defendants below, in June, 1918, moved into a dwelling that H. M. Womack, Sr., the father, had caused to be erected for appellees shortly after their marriage. Appellees there resided continuously from June, 1918, until late March, 1928, when they moved to Paris, Texas. Appellees moved back to the residence in 1937, where they have since continuously resided.

This trespass to try title action filed by H. M. Womack, Jr., for title and possession of a 1⅓ acre plot the appellees answered with a claim of title by virtue of an asserted oral gift in 1918, from the father and his wife, Letha, to appellees together with alleged valuable improvements made in good faith pursuant thereto. Appellees also specially pleaded that title had ripened in them by virtue of the provisions of art. 5510, R.C.S. of Texas, the ten years' statute of limitation. Appellees admitted in their pleadings that plaintiff was entitled to recover the premises, except so far as it may be defeated in whole or in part by the allegations of their answer constituting a good defense that may be established on the trial.

In response to special issue No. 1, the jury found that appellees had been in

peaceable and adverse possession of the 1⅓ acres of land, using, cultivating, or enjoying the same, for a continuous period of ten years or more after they took possession in June, 1918, and prior to the filing of this suit on March 28, 1947. Answering No. 2 that the father did not make an oral gift of the house and land to appellees, the jury did not answer the related issues required only upon an affirmative finding to No. 2. In answer to issue No. 6 which inquired whether appellees first took possession as tenants or as owners, the jury found that they took possession as owners. H. M. Womack, Jr., appeals from the judgment which denied him a recovery, grounded on above verdict.

Based upon appellees' admission in their pleading and upon the contention that there was no evidence of such probative force as to warrant the submission of any issue of fact to the jury, appellant complains of the refusal of the trial court to grant his motion for an instructed verdict at the close of the evidence and for refusal to grant his motion for judgment non obstante veredicto.

In contesting appellees' claim of an oral gift of the property and their defense urged under the provisions of the 10 years' statute of limitation, appellant offered evidence to the effect that the father built and furnished the house for appellees pursuant to his custom he had followed through the years to furnish his tenants and employees with a house to live in on the plantation. In 1918, for some years prior and subsequent thereto, Sam Womack and his father were partners in the operation of a commissary on the plantation, Sam being paid a salary in addition to a share in the profits.

The father vigorously denied a gift of the house and lot and asserted that appellees had entered the house as his tenants who had never visited upon him until the fall of 1941 with any notice, actual or constructive, of their repudiation of such alleged tenancy. Appellant offered in evidence a trespass to try title action filed by the father in September, 1943, against appellees; the dismissal of that suit upon the payment of Sam Womack of $100, and a receipt reciting it was paid as rents

for the period January 1, 1944, to July 1, 1944. On July 14, 1926, appellees applied for a $5,500 loan on a lot in Paris, Texas, and from the proceeds of the loan thereafter erected a residence in Paris, later occupied by appellees which they subsequently sold. The telephone directory issued in July, 1928, listed a telephone in the name of appellees at this Paris location. In the application for the loan in 1926, appellees gave Medill, Oklahoma, R. 1, as their address and designated "320 acres, Terry County, Texas," as their homestead. A designation of this 320 acres as their homestead was also filed and recorded at the same time in Lamar County deed records. In 1937, Sam B. Womack went into bankruptcy. His schedule of assets was listed as being a house and lot in Paris with his furniture and household effects therein situated, and in the house (in controversy) situated on R.F.D. 6, Paris. The latter house and lot were not listed as part of his assets. At the time of the erection of this house, the father and his wife owned a large plantation consisting of several thousand acres of Lamar County land with some twenty-five tenant houses situated thereon. The dwelling in controversy was erected across the road but near the residence of the father.

Many years after the dwelling was erected the father and mother were divorced. In the partition of the property between them, the father took certain acreage. The dwelling plot is located within the description of the lands awarded the father. The mother received other acreage including the home place where she has since continued to reside.

In February, 1940, the father went into bankruptcy in which he scheduled as assets the land he had received in the partition growing out of the divorce decree. Prior to this bankruptcy, the father assisted by Sam Womack, chained and measured out of a big tract a 25-acre parcel in the shape of a square. A residence occupied by the father and his second wife, a gin and other buildings were situated on this 25 acres. This with another tract of 175 acres were claimed as a homestead. It appears that all the lands including that which Letha had received as her part of the

community estate were heavily encumbered with liens and were all released in the bankruptcy as not having a market value in excess of the liens. Appellees never rendered the house and lot for taxes, paying none, and never requested a deed to same from the father. They never paid any rents; none demanded.

The evidence above detailed and other testimony urged by appellant and deductions that could be drawn therefrom, if standing alone, lends strong and appealing support to appellants' contention that appellees went into possession and occupied the house and lot as a tenant and occupied the same at the will and sufferance of the father, without notice, actual or constructive, at any time of a repudiation of such alleged tenancy being visited upon the father. "In passing upon the motions of the type presented (for an instructed verdict as well as for judgment non obstante veredicto), the trial court is governed by the test of whether or not there has been introduced on the trial of a case, any testimony of such probative force as to raise an issue of fact. If so, the motion must be denied. Any inference which reasonably may be drawn from the testimony must be indulged against granting a motion for an instructed verdict." Self v. Becker, Tex.Civ.App., 195 S.W.2d 701, 702; White v. White, 141 Tex. 328, 172 S.W.2d 295.

According to the evidence offered by appellees, it was during the Christmas season of 1917, shortly after their marriage, while in the home of the father in the presence of Letha Womack, the mother, that he suggested to them that he would build them a home across the road from the parents' home and requested Johnny Belle to get some plans up for the house, which she says she did. She claims to have supervised its construction. The house was equipped with many conveniences. Appellees upon its completion moved in during June, 1918. Their three children were born there. On account of better schools they moved to Paris in late March, 1928, and as detailed by them, "moving most of their furniture"; "took our better furniture but left enough in the house to use at any time we wished to spend a brief time back on the farm." There is evidence that they returned and spent the summer of 1928, staying until the fall term of school began, using the furniture left in the house. There is evidence that some of this furniture remained in the house through the years. From time to time the house was repapered and repainted, garages and outhouses constructed; porches and steps repaired; and new closets in the house built and other improvements made. An orchard was set out, a garden built, the lot leveled off and a hedge and shrubbery planted. Appellees claimed they made all these repairs and improvements. The father claimed he had made some of them. The father claims he exercised control of the house when appellees were in Paris and at times rented the house and appropriated the rents. Appellees and Letha Womack claim she supervised the control and rental of the property at the request of appellees. There is evidence of alleged declarations made by the father that the house and lot belonged to appellees and that he had given it to them. The mother claims it was given to appellee. The testimony of his brothers and his mother was in harmony with that given by appellees.

It is evident from the affirmative answer to the issue on limitation that the jury believed the evidence offered by appellees that they entered this house thinking and claiming it as their home and there remained continuously from June, 1918, to late March, 1928, during which time they repaired and improved the house and landscaped the lot; that appellee maintained possession after March, 1928, through their rental of the property and its supervision by the mother, their alleged agent; that a part of appellees' furniture remained in the house during the years involved; that appellees returned and occupied the place during the summer months of 1928 until early fall. The father was then financially able to give appellees the home. To have done so could have been the natural response of a father to his eldest son, then a newlywed, and lends support to appellees' position in this case. Evidence was introduced of alleged statements by the father that same was the property of appellees; and in explanation why a deed had

not been .made, the father thought it wouldn't look right to the loan company if he made .a deed to it.

It is evident that the jury accepted appellees' explanation about his alleged designation in 1926, of the 320 acres in Terry County as his homestead, when he testified he had never seen the land; void of any improvements, being State land which he had obtained in a trade in which he had a $320 equity; and that he had never intended to use it as a homestead. In 1943, after a controversy had arisen and his father filed suit, he claims to have paid the $100 to keep out of a trial and insists he didn't know the contents of the receipt. It appears that thereafter, in 1946, appellees prevailed in a forcible detainer suit in a contest with H. M. Womack, Jr., over the property in controversy; the father joined by his second wife having conveyed to appellant, the son by his second marriage, all his holdings in the plantation consisting of a large acreage.

■ It is to be observed from the evidence, the character of which has been briefly detailed, that appellees offered material evidence which was in sharp conflict with that offered by appellant. Appellees' explanations of documentary evidence were susceptible of favorable deductions by the jury, the trier of the facts, the judges of the credibility of the witnesses, and the weight to be given their testimony. The evidence was of such probative force as will not authorize an appellate court to disturb the trial court's refusal to grant either of appellant's requested motions or in disturbing the jury's findings.

If it be assumed, which we need not decide, that the jury's answer to above special issue No. 6, constituted an ultimate fact finding, such finding is not in irreconcilable conflict, as urged by appellant, to the finding in response to special issue No. 1.

In connection with submission of issue No. 1, the court instructed the jury: "'Adverse possession', as used in the above question, is an actual and visible appropriation of the land commenced and continued under a claim of right inconsistent with and hostile to the claim of any other owner or owners." "* * * 'A claim of right' means an intent on the part of the person or persons in possession to claim the land as their own, that is, to hold it for themselves. The term 'hostile' means an occupancy of the land under a holding by a person or persons in possession as owners and therefore against all other claims to the land."

The finding in response to special issue No. 6, that appellees first took possession as owners (not as tenants) of the father is in harmony with the affirmative finding on limitation that appellees' occupancy "commenced and continued under a claim of right" with the intent "to claim the land as their own."

■ It becomes unnecessary to discuss the contention that findings to issues Nos. 2 and 6 are in conflict; for the ultimate fact finding by the jury in the affirmative in response to issue No. 1 supports the decree which denied appellant a recovery of the land sued for. 41 T.J., p. 1224; State National Bank of Houston v. Woodfin, Tex.Civ.App., 146 S.W.2d 284, 287; Big Six Oil Co. v. West, Tex.Civ.App., 136 S.W.2d 950, 954; Railroad Comm. v. Stephens, Tex.Civ.App., 147 S.W.2d 879, 882.

The testimony given by Mrs. Sam Womack that strained relations had developed between the father and appellees did not disclose an additional fact to that revealed by other evidence introduced without objections. The offer by the father to give or to build a home for the newlyweds in 1917 would indicate that amicable relationship then existed in the family. The divorce and second marriage, the two lawsuits that had been filed prior to the instant one, the sides taken by the members of the family in their testimony in the trial reflected discord.

■ The testimony admitted as to the number of tenant houses then on the plantation at the time the father suggested that he would build a house for appellees was admissible on the issue of the alleged oral gift of the new house. This same fact was disclosed by evidence admitted without objection which related to the extent and character of property owned by

the father and his wife in the partition of the community estate.

The other points have been carefully considered and finding no error, the judgment of the trial court is affirmed.