**MOSSLER ACCEPTANCE CO. v. ROBINSON.**

No. 12522.

Court of Civil Appeals of Texas. Galveston.

Feb. 26, 1953.

Rehearing Denied March 19, 1953.

Cutrer & Cook and W. Lawrence Cook, Jr., both of Houston, for appellant.

Collier & Pepper, Morris Pepper and Fred Lewis, all of Houston, for appellee.

MONTEITH, Chief Justice.

This action involves the purchase by appellee, Samuel D. Robinson, Jr., of two 1949 Pontiac automobiles from J. C. Tips, of Travis Motors. One was purchased by contract dated April 5, 1949, for the sum of $2995, and in June of 1949 appellee entered into a contract with Travis Motors, represented by J. C. Tips, to purchase another 1949 Pontiac with hydramatic transmission for the sum of $2795. Appellee alleged that he paid $555 in cash for the depreciation in value of the first automobile, and executed a note and chattel mortgage in the sum of $1968.86 to secure the payment of the unpaid balance on the second automobile. The note was made payable in monthly installments of $82.04. Appellee alleged that said note and chattel mortgage were assigned to appellant, Mossler Acceptance Company. He seeks recovery from appellant of usurious interest alleged to have been paid by him in connection with the contract to purchase the second Pontiac. He also sought cancellation of the chattel mortgage lien on the second automobile. Appellee alleged that he had paid all sums legally due under the contract creating the lien on the second Pontiac.

In response to special issues submitted, the jury found that it had been agreed between appellee and J. C. Tips that the purchase price for the second automobile was $2795; and that appellee and J. C. Tips had agreed that all credits and payments previously made by appellee on the first automobile in the amount of $2295 would be applied as credits on the purchase of the second automobile. The jury further found that appellee had agreed to pay $555 for the depreciation in value of the first automobile, and that the amount of such credits and payments made by appellee on the first Pontiac was $2295. The jury further found that the balance due on the purchase price of the second automobile, at the time appellee executed the contract of conditional sale, was $500; that by signing the conditional sale contract for the purchase of the second automobile, appellee agreed to pay as interest the difference between the balance due on the purchase price of the second automobile and the amount of the conditional sale contract in the sum of $1968.86, less $178 for insurance. The jury found that it was agreed by appellee and J. C. Tips that appellee should pay as interest and carrying charges the sum of $1290.96.

Judgment was rendered by the trial court on the verdict of the jury cancelling the conditional sales contract for the purchase of the second car. The Court decreed that the note for $1968.86 assigned to appellant and the chattel mortgage executed by appellee to secure its payment were tainted with usury and, appellee having paid appellant the sum of $738.36, the Court cancelled the note and chattel mortgage.

The record shows that appellee purchased the first automobile for an agreed purchase price of $2995. He made a cash down pay-

ment of $750 and was allowed $1245 trade-in credit on a 1946 Ford, leaving a balance due of $1,000. He signed a contract to pay for the new (first) car in the sum of $1188; the difference between that amount and $1,000 was for insurance and carrying charges.

The contract for the purchase of the first car was assigned to appellant on April 6, 1949.

Appellee identified his signature to the contract of conditional sale on the second automobile, but testified that he had signed it in blank, and that the figures including the purchase price of the second automobile, amounting to $2560, were filled in by J. C. Tips.

In 42 Tex.Jur., page 889, § 11, it is said: "The determination of whether usury exists is a matter involving the principle that the dominant purpose or intention of the parties is to be ascertained from the contract interpreted as a whole, in the light of the attending circumstances and the governing rules of law. * * *"

█ In this action there was no evidence that appellee agreed that the full amount of $1290.96 should constitute interest, but the jury found on what we deem to be sufficient evidence that J. C. Tips fraudulently or inadvertently caused the blanks in said contract to be filled in such a way as to provide for a sale price of $2560 and a down payment of $1,000 instead of a sale price of $2795 and a down payment of $2295. It thus appears that the contract assigned to appellant, Mossler Acceptance Company, on which appellee made his payments, was in derogation of rather than in conformity with the oral agreement between Tips and appellee.

In 42 Tex.Jur., page 896, § 17, it is said: "In order to constitute usury, it is essential that there be a contract to pay usurious interest, and the same is true to authorize an action to recover penalties under Article 5073 of the Revised Statutes. * * *"

From the foregoing analysis, it is apparent that appellee and Tips made a valid oral agreement whereby appellee purchased an automobile and agreed to pay the balance of the purchase price, plus insurance premiums. He contends that thereafter he discovered that Tips without lawful authority had filled in the blanks in such contract in a manner contrary to said oral agreement between them and had negotiated the contract to appellant, Mossler Acceptance Company. Continental Savings & Building Ass'n v. Wood, Tex.Civ. App., 33 S.W.2d 770, affirmed, Tex.Com. App., 56 S.W.2d 641.

Under appellant's second point, it alleges that the Court erred in rendering judgment for the appellee on the verdict of the jury, since there was a material conflict in the answers of the jury to special issue No. 7 and in response to special issues Nos. 2 and 3. In answer to special issues Nos. 2 and 3, the jury found that the amount of the agreed down payment on the second automobile was $2295, and in answer to special issue No. 7, the jury found that in preparing the contract of conditional sale J. C. Tips did not fail to give appellee credit for the full amount of the down payment agreed upon between them for the purchase of the second automobile. The contract of conditional sale dated June 2, 1949, shows that the amount of the down payment for which appellee was given credit was $1,000. The purchaser's statement signed by appellee likewise showed a down payment of $1,000, and the trial court entered judgment on the verdict of the jury in its entirety.

There is a clear issue of fact as to whether the agreed down payment for which appellee was to be given credit in connection with the purchase of the second automobile was $2295 or $1,000. Appellee testified that he was to be allowed a credit for all payments previously made for the purchase of the first automobile, aggregating $2295; however, the written instruments including the contract of sale and the purchaser's statement reflect a down payment of $1,000.

█ The trial court entered judgment on the verdict in its entirety, and under such circumstances there is no authority for any express or implied findings contrary to an express finding of the jury.

Price v. Seiger, Tex.Com.App., 49 S.W.2d 729.

■ The question as to the amount of the agreed down payment is one of the ultimate and controlling issues of fact in this action, and is one on which the trial court's judgment must have been based. While our courts have uniformly held apparent conflicts in the jury's answers should be reconciled if this can be reasonably done in the light of the facts in the particular case, there does not appear to be a possibility of reconciling these findings on these ultimate issues. State National Bank v. Woodfin, Tex.Civ.App., 146 S.W. 2d 284; 41 Tex.Jur., 1226, § 36; Price v. Seiger, supra; Speer's Special Issues, § 434, p. 563.

Under the above authorities there appears to be an irreconcilable conflict in the jury's findings on material issues, and the trial court was without authority to render judgment on the verdict. It follows that the judgment of the trial court must be reversed and the cause remanded for further proceedings.

Reversed and remanded.